PAUL HUSTON *et al.*

*v.*

CHARLES W. CLARK *et al.*

*Filed at Springfield September 27, 1884.*

1. DRAINAGE LAW—*constitutional limitation as to legislative power to authorize drainage districts, etc.* By section 31, article 4, of the constitution, adopted at the November election, 1878, the legislature is given power "to provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct, * * * by special assessments upon property benefited thereby." In this there is no limitation upon the legislature as to the mode of forming such districts, or as to the agencies or instrumentalities to be used in their creation.

2. SAME—*act of 1879—of its constitutionality—by whom the taxing power is permitted to be exercised.* The Drainage act of May 29, 1879, is not unconstitutional, as an attempt to confer the power of taxation upon the judiciary. Under that act the commissioners or corporate authorities are required to find the amount necessary to be raised by special assessment, to consummate the proposed work, and the jury called have nothing to do with that. They can apportion, only, that sum among the several tracts of land in the district, as they may be severally benefited, and in no case can the sum assessed against any one tract exceed the benefits it will receive.

3. SAME—*as to the mode of selecting the "corporate authorities" relating to drainage districts.* Nor is the act obnoxious to the constitutional objection that it fails to provide for the election of the corporate authorities of a district, when formed. The constitutional provision relating to drainage districts does not require that the corporate authorities who exercise the power of levying special assessments on lands benefited, shall be elected by the people of the districts. The special amendment of the constitution, adopted in 1878, so far as it invades the former limitations of the constitution, must prevail, and such limitations are not applicable to special assessments for drainage purposes.

4. SAME—*practice—time to object to omission of names of land owners in petition.* The failure to state the names of land owners in a petition for the formation of a drainage district, can not be taken advantage of by a land owner on appeal from a judgment confirming a special assessment on his land, especially when he has appeared and contested the application at every step, without making any objection on that account, so as to afford an opportunity to obviate it by amendment.

5. SAME—*confirmation of commissioners' report—presumption in its favor.* Where the county court confirms the report of the commissioners appointed, which finds that no lands will be injured, and the evidence heard is not preserved in the record, this court will presume that there was evidence justifying the county court in approving the report. It does not necessarily follow that a drain through land will be a damage to it.

6. SAME—*of the assessment roll—how made up.* While section 18 of the Drainage act directs the jury to "assess the damages and benefits against each tract separately, in the proportion in which such tract of land will be damaged or benefited," it does not require that the amount of each shall be entered in the assessment roll; and section 17 directs, only, that the balance or excess of the one over the other be carried forward to a column prepared for that purpose.

7. Where the column in an assessment roll for damages contains no entry of damages, it will be presumed that the column headed "benefits," shows only benefits in excess of damages, even if damages were shown.

8. SAME—*amending assessment roll after separation of jury.* Where an assessment roll describes two tracts of land as in a wrong township, which the record shows to have been a mere clerical error, there is no error in the court allowing the same to be corrected by the foreman of the jury after separation, as the foreman, alone, is authorized by the statute to certify to the assessment.

9. CONSTITUTIONAL LAW—*making organization of a corporation depend on a finding of facts by a court.* The mere fact that the county court is required to find certain essential facts preliminary to the formation of a corporate body, does not make that body, when formed, the creature of the court. In such case the court, in declaring the corporation organized on finding the necessary facts, only declares the law which attaches upon such finding, and which becomes operative only when the proper precedent steps have been taken.

10. SAME—*a power carries with it the means to make it effective.* An express grant of power to the legislature by the organic law, to do a certain thing, without any words of limitation or restriction, carries with it all necessary and proper means to make the power effectual, and the legislature, in such case, is the sole judge of the means to be employed to promote the end designed.

WRIT OF ERROR to the County Court of Edgar county; the Hon. ANDREW J. TROGDEN, Judge, presiding.

This was a proceeding commenced in the county court of Edgar county, under section 2 of the Drainage act of May 29, 1879, known as the "Levee act," for the formation of a drainage district, and the assessment of benefits upon the lands embraced therein, above damages. The petition, signed by a majority of the adult land owners having more than one-third of the lands in the proposed district, was filed in the county court on February 18, 1882, and properly described the lands sought to be incorporated into the proposed district, and was verified by affidavit. On the hearing, the petition was dismissed as to the lands of one of the original defendants, and three commissioners were appointed by the court, and the district was, by an order of court, established, by the name of the "Sims Special Drainage District." The commissioners, by their report, found the probable cost of constructing the necessary drains, and annual cost of keeping the same in repair, and certain other facts, as required by the act. They also found that the benefits would greatly exceed the cost of constructing the work, and that there would be no lands injured, but all would be benefited, and also found that other lands not named in the petition would be benefited by the proposed work, which were described, and included by the commissioners in the proposed district. On March 12, 1883, an order was made confirming the report of the commissioners, and establishing the district, and ordering that a jury be summoned to assess benefits and damages. On March 30, 1883, the report of the jury was filed assessing benefits upon the lands in the district. No damages were reported in the column set apart for that purpose. After exception to the report, the jury, on April 24, 1883, made and returned to the commissioners a new assessment roll, which was returned by them to the county court. In this

roll the lands of Almira Poor and Edmund Sheehey were described as being in township 14, north, range 12, west, instead of "14, north, range 13, west." On June 12, 1883, the court granted leave to the foreman of the jury to amend the assessment roll, so as to correct the mistake in the description of the lands of these parties, which was done.

The court overruled exceptions taken to the report of the jury, and confirmed the same as amended, and ordered that such assessment be paid,—twenty-five per cent thereof on September 1, 1883, fifty per cent January 1, 1884, and twenty-five per cent April 1, 1884. No question was made as to the regularity or sufficiency of the notices of the various meetings. The errors assigned are—

*First*—The act of the legislature is unconstitutional and void, and therefore the court erred in proceeding under it.

*Second*—The petition was insufficient to give the court jurisdiction, in failing to give a "general description of the lands embraced in the proposed district, *with the names of the owners, when known.*"

*Third*—The court erred in making the order establishing the district, the commissioners' report failing to show what lands would be damaged.

*Fourth*—The court erred in ordering a jury, and having them assess benefits.

*Fifth*—The court erred in allowing the foreman of the jury to amend the assessment roll.

*Sixth*—The court erred in overruling the objections to the assessment roll, and in confirming the same.

*Seventh*—The court erred in not dismissing the whole proceeding in each and every stage thereof.

Mr. HENRY TANNER, and Mr. JAMES A. EADS, for the plaintiffs in error.

Messrs. SELLAR & DOLE, for the defendants in error.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The principal objection urged against the validity of the proceeding and the judgment of the county court is, that the act of May 29, 1879, under which they were had, is unconstitutional and void, as an attempt to confer upon the judicial department the power of taxation. It is claimed that the district organized was the act of the county court, and not that of the people residing therein, and it is urged that the commissioners, who are called the "corporate authorities" of the district, were not elected by the people of the district, nor appointed in any mode to which they had given their assent, and that the assessment of benefits is not by the act required to be made by the "corporate authorities" of the district, but by a jury selected by the county court. We do not think the act is liable to the objection that it attempts to invest the county court with the power of taxation for the district when formed. The act does not attempt to confer any such power. By section 31, article 4, of the constitution, adopted at the November election, 1878, the General Assembly may "provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct, * * * by special assessment upon property benefited thereby." In this there is no limitation upon the legislature as to the mode of forming such districts, or as to the agencies or instrumentalities to be used in their creation. As said in *Blake* v. *The People*, 109 Ill. 504: "Surely there can be no reason why the county court may not be invested with power to inquire into and find the existence of certain preliminary facts deemed important, as prerequisites to the corporation. This is not unusual, but in all like cases, where the facts deemed necessary to be found are of a nature that the General Assembly can not conveniently investigate them, the practice has been to refer their determination to some local tribunal."

An express grant of power to do a certain thing, without any words of limitation or restriction, carries with it all necessary and proper means to make the power effectual, and the body to whom such power is given is in such case the sole judge of the means to be employed to give it practical effect, especially where that body, except so far as limited and restricted, has plenary power. The fact that the county court is required to find certain essential facts preliminary to the formation of a corporate body, does not make that body, when formed, the creature of the court. The court having found facts in declaring the corporation organized, only declares the law which attaches to such facts, and becomes operative when the proper precedent steps have been taken. In finding the facts, the county court does nothing more than any other court or other officer does under similar circumstances. The judges of election, in canvassing the votes and certifying to the number of votes cast for the several candidates, do not elect any one. The election is the act of the qualified electors, under the law. It would be often impracticable for the legislature to ascertain certain facts upon which rights, duties and responsibilities attach, and these may be left to be determined even by ministerial officers. When found, the consequences flowing from their existence are the result of the law, which, of course, would never have attached but from the fact of the existence or performance of such acts, and a finding of the same in some mode prescribed by law. The constitutional provision does not require that the corporate authorities who may exercise this power shall be elected by the people of the district. The special amendment of the constitution adopted in 1878, so far as it invades the former limitations of the constitution, must prevail, and such limitations are not applicable to the subject matter of this special amendment.

It is also urged that the special assessments are not required to be made by the commissioners or corporate authorities of the district, but by a jury selected by the county court.

It will be seen that the commissioners are first required to find the sum necessary to be raised by special assessment, to consummate the proposed work, etc. The jury called have nothing to do with fixing the aggregate sum to be raised by special assessment. They only apportion that sum already found, among the several tracts of land according as they may be severally benefited, and in no case can the sum assessed against any one tract of land exceed the benefits it will receive. It can not, therefore, be said that the jury levy the assessment of benefits.

It is contended that the petition in this case was not sufficient to give the county court jurisdiction of the subject matter, because it does not give the names of the owners of the lands within the proposed district. It is true that section 2 of the act contemplates that the petition shall give the names of such owners, if known; but the statute does not seem to be mandatory in this respect. It says that persons desiring to form a drainage district "*may file*" a petition setting forth certain matters, "with a *general* description of the lands proposed to be affected, with the names of the owners, *when known*." The notice required to be given of the filing and presentation of this petition is not required to state the names of the owners of the lands, or set out a copy of the petition. It would seem the only purpose served by giving the land owners' names in the petition would be to notify them of the proceeding, and afford them an opportunity to defend. In this case the owners appeared and contested the application at every step. This would obviate the necessity of any notice to them of the proceeding, and give the court jurisdiction, and after having contested the case upon the merits, it is now too late to take advantage of a formal defect in the petition, if there was any, which might have been cured by an amendment, if objected to in proper time.

By section 9 of the act, the commissioners are required, among other things, to report to the court what lands will

be injured by the proposed work, and the probable amount of all damages, etc. The commissioners reported that no lands would be injured by the drainage or the construction thereof. It is claimed that their report, and the proceedings, show that the proposed drains will pass over lands, and that the open ditches will be from ten to fifteen feet wide. The record fails to give the evidence on this point, and the court having confirmed the report, it will be presumed that the evidence heard, justified the court in approving the report and finding that no lands would be injured by the drainage. It does not necessarily follow that a drain through a tract of land is an injury to the same. On the contrary, there are cases when it would be a great benefit, and no damage at all. Besides, it does not appear that any one claimed any damages for the construction of any drain over his land.

One of the exceptions taken to the assessment roll returned by the jury is, that the jury did not allow any compensation or damages for the land taken for the making of the drain, except $25 on one tract, to Edmund Sheehey. In addition to what has just been said, it will be observed that by section 17 of the act it is only the balance of the benefits or damages that is to be carried forward to a separate column. The clause of that section bearing on this point reads: "And in case damages are allowed to and benefits assessed against the same tract of land, the *balance,* if any, shall be carried forward to a separate column for damages or benefits, as the case may be." It is true section 18 directs the jury to "assess the damages and benefits against each tract separately, in the proportion in which such tract of land will be damaged or benefited," but it does not require that the amount of each shall be entered in the roll, while the preceding section directs only that the balance or excess of the one over the other be carried forward to a column, etc. The column in the assessment roll for damages contains no entry of any damages, and it will be presumed that the column headed

"benefits," shows only benefits in excess of damages, even if the record showed there were any damages. In such a case it would be presumed, in favor of the judgment below, that the jury did allow damages, and that the amount of benefits assessed was the amount of benefits less the damages.

It is insisted that the court erred in permitting the foreman of the jury to correct and amend the assessment roll after the jury had separated and gone home. This objection applies only to two tracts of land, and, if well taken, could not avail any of the plaintiffs in error except Almira Poor and Edmund Sheehey, the owners of such tracts. All the lands composing the district were in township 14, north, range 12, west, except one belonging to Miss Poor and one to Mr. Sheehey, which were in township 14, north, range 13, west. This clearly appears from the petition and the map accompanying the same as an exhibit, as well as from the surveyor's plat and certificate embodied in the commissioner's report. The clerk, in making out the assessment roll with a list of the lands for the jury to assess, by mistake described all of the lands as in range 12, west, which mistake was not discovered until after the jury had separated. It is evident that the misdescription of the two tracts was a mere clerical error. This is apparent by considering the whole record together. The court could not call a jury to assess any other lands than those named in the petition and the order of the court. There was enough in the record from which to make the amendment, and it was proper to allow the foreman of the jury to correct the report and assessment roll. Section 22 of the act provides that if no objection is made to the assessment at the time and place appointed to hear objections, or if it is found correct, or is corrected, the jury shall confirm the assessment, which shall be certified by the foreman of the jury and delivered to the commissioners. Thus it is seen that the foreman alone is required to certify to the assessment, and that being so, no good reason is perceived why he may not, by leave of

court, correct a clerical error in the roll showing the assessments, especially as the statute does not make such assessment final until after a further hearing in the court.

Some other objections have been made, which we do not consider it necessary to answer in detail.

We find no error in the record demanding a reversal, and the judgment will be affirmed.

*Judgment affirmed.*