THE CITY OF CHICAGO

*v.*

EDWY LOGAN REEVES.

*Opinion filed February 15, 1906—Rehearing denied April 5, 1906.*

1. CONSTITUTIONAL LAW—*provision prohibiting the legislature from proposing amendments to more than one section construed.* Section 2 of article 14 of the constitution, providing that the General Assembly shall have no power to propose amendments to more than one article of the constitution at the same session, means express amendments of more than one article, and not implied amendments of other articles, relating to the same subject, necessarily resulting from the express amendment of one.

2. SAME—*amendment has the effect of harmonizing previous portions in conflict with it.* Express amendment of a statute or constitution has the effect to bring into harmony with itself the previous provisions of the statute or constitution upon the same general subject, in so far as such provisions are in conflict with the amendment.

3. SAME—*constitutional amendment of 1904 relates to proper article.* The purpose of the constitutional amendment of 1904 was to empower the legislature to establish a local municipal government in the city of Chicago, and hence it was properly proposed as an amendment of article 4 of the constitution, which is the article relating to the law-making power of the State and contains the provision against the passage of local or special laws, which would otherwise preclude the enactment of the law contemplated by the proposed amendment.

4. SAME—*constitutional amendment of 1904 is valid.* The establishment of a municipal court, the abolishment of the offices of constables, police magistrates and justices of the peace in the city, the limiting of the jurisdiction of constables, police magistrates and justices of the peace in the county to territory outside the city, and the making of provision to obtain revenue to pay the indebt-

edness of the city, are matters germane to the object of establishing a local municipal government, and hence the constitutional amendment of 1904 is valid and other prior provisions of the constitution in conflict with the amendment must give way.

5. SAME—*Municipal Court act of 1905 is not unconstitutional.* The Municipal Court act of 1905 (Laws of 1905, p. 157,) is, in the main, a valid enactment, and is not, as a whole, unconstitutional.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

JAMES HAMILTON LEWIS, Corporation Counsel, and HIRAM T. GILBERT, (JOHN P. WILSON, and JOHN BARTON PAYNE, of counsel,) for appellant:

The constitutional amendment of 1904 embraces but a single subject, to-wit, the municipal government of the city of Chicago, and for that reason is a proper amendment of article 4, even if its effect be to modify or amend, directly or indirectly, provisions of articles 6 and 9.

All the provisions in the constitutional amendment of 1904 pertain strictly to the municipal government of the city of Chicago, and there is not one of them that is not germane thereto. This is true not only as to the other provisions, but also as to that in reference to municipal courts. *Davis & Bro.* v. *Woolnough,* 9 Iowa, 104; *People* v. *Hurst,* 41 Mich. 328; *Potwin* v. *Johnson,* 108 Ill. 70; *O'Leary* v. *County of Cook,* 28 id. 434; *People* v. *Palmer,* 64 id. 41.

Viewing the amendment as one which embraces but a single subject, it is supported by authority. *People* v. *Sours,* 74 Pac. Rep. 167.

To hold the constitutional amendment of 1904 void as constituting amendments to more than one article of the constitution is to require the nullification of each of the first three amendments, and perhaps of other amendments, to the constitution.

The first amendment was that of section 31 of article 4, which was amended in 1877 in such a manner as to modify or invade the limitations and safeguards provided by sec-

tion 13 of article 2, section 9 of article 9 and section 14 of article 11. The court, however, recognized its validity in numerous cases. *Moore* v. *People,* 106 Ill. 382; *Huston* v. *Clark,* 112 id. 344; *Hyde Park* v. *Spencer,* 118 id. 453; *Wilson* v. *Trustees,* 133 id. 443; *Railroad Co.* v. *Drainage District,* 194 id. 319; *Blake* v. *People,* 109 id. 504; *Owners of Lands* v. *People,* 113 id. 304.

The second amendment was that of section 8 of article 10, the effect of which was to also modify or amend section 28 of article 4. This amendment was given effect by the court. *People* v. *Supervisors,* 100 Ill. 495.

To hold the constitutional amendment of 1904 invalid for the reason alleged would be inconsistent with the rulings of the court with respect to other constitutional provisions. Section 12 of article 4 provides that "no law shall be revived or amended by reference to its title only, but the law revived or the section amended shall be inserted at length in the new act." In a number of cases arising after the adoption of the constitution it was contended that this provision embraced enactments which amended prior laws by implication, but this view was held unsound by the court. *People* v. *Wright,* 70 Ill. 388; *Timm* v. *Harrison,* 109 id. 503; *School Directors* v. *School Directors,* 135 id. 464; *People* v. *Loeffler,* 175 id. 585; *People* v. *Knopf,* 183 id. 410.

The power of the General Assembly to propose amendments to the constitution is unlimited and unrestricted, except in so far as there is some specific limitation or restriction contained in the constitution. Such limitations and restrictions as are contained in the constitution, being in derogation of the common right, must be strictly construed, and every intendment, inference and presumption is in favor of the right to amend the constitution and against the limitation upon such right. Cooley's Const. Lim. p. 68; *Firemen's Benevolent Ass.* v. *Lounsbury,* 21 Ill. 511.

The legislature of this State can do any legislative act that is not prohibited by the State or Federal constitution,

and without and beyond the limitations and restrictions contained in those instruments the law-making power of the State is as absolutely omnipotent and uncontrollable as that of the English Parliament. *People* v. *Hill,* 163 Ill. 186.

JOHN C. RICHBERG, and HENRY SCHOFIELD, (RICHBERG & RICHBERG, of counsel,) for appellee Reeves:

The Municipal Court act is void unless its passage can be defended under the so-called Chicago charter amendment of the State constitution, because it contravenes the State constitution, stripped of said amendment. Const. art. 4, sec. 22, clauses 6-10, 12, 20, 23; *Pettibone* v. *Park Comrs.* 215 Ill. 304; *Devine* v. *Cook County,* 84 id. 590; *Strong* v. *Dignan,* 207 id. 385; *People* v. *Trustees,* 170 id. 468; *Cummings* v. *Chicago,* 144 id. 563.

The act at bar must all fall, because repugnant to the State constitution, unless it can be supported under and by virtue of the terms and provisions of the so-called Chicago charter amendment of the State constitution.

Article 14 of the State constitution prescribes but two modes in which it may be amended,—the convention mode and the legislative mode. Section 1 of article 14 prescribes the convention mode. That section operates as a limitation upon the power of the General Assembly. Thayer's Cases on Const. Law, 248, 249; *Wood's Appeal,* 75 Pa. St. 59; Jameson on Const. Convention, (4th ed.) secs. 219, 574*h*, 315, and preface; *Wells* v. *Bain,* 75 Pa. St. 39; 6 Am. & Eng. Ency. of Law, (2d ed.) 902.

Section 2 of article 14 prescribes the legislative mode. That section is a grant of power to the General Assembly, and is not a limitation upon the plenary, general legislative power of the General Assembly. This right of the people does not vest in the legislative department at all unless the people expressly so say in and by their constitution. The right or power is of so high a nature that it belongs to, and inheres in, the people alone, and is not legislative in its na-

ture. No means are legitimate for the purpose indicated but conventions, unless employed under an express warrant of the constitution. Jameson on Const. Convention, (4th ed.) 549.

The legislative mode of amendment prescribed by a constitution must be adhered to, and no other or different legislative mode of amendment can be lawful. *Opinion of Justices,* 6 Cush. 573; *Koehler & Lange* v. *Hill,* 60 Iowa, 543; *Livermore* v. *Waite,* 102 Cal. 118; Jameson on Const. Convention, (4th ed.) 574*h;* 6 Am. & Eng. Ency. of Law, (2d ed.) 902-906, notes and citations.

The legislature is not authorized to assume the functions of a constitutional convention under the guise of proposing amendments. 6 Am. & Eng. Ency. of Law, (2d ed.) 902-904.

The legislative proposal was not such a proposal of an amendment to the constitution as that it could become a part of the constitution, within meaning of section 2 of article 14.

The amendment cannot operate as a constitutional provision unless it can, and does, operate to limit the power of the General Assembly. *Wilson* v. *Sanitary District,* 133 Ill. 443; *Chicago* v. *Cicero,* 210 id. 290.

JOHN J. HERRICK, also for appellee Reeves:

The General Assembly shall have no power to propose amendments to "more than one article" of the constitution at the same session, nor to "the same article oftener than once in four years." Const. art. 14, secs. 1, 2.

The power to formulate and submit proposed amendments to the constitution is not a power inherent in the legislative department, but must be conferred by a special grant in the constitution, and a strict observance of its requirements is essential to the validity of amendments proposed and adopted under it. 6 Am. & Eng. Ency. of Law, (2d ed.) 902; *Paving Co.* v. *Hilton,* 69 Cal. 489; *Livermore* v. *Waite,* 102 id. 113; *Collier* v. *Frierson,* 24 Ala. 108; *Koehler* v. *Hill,* 60 Iowa, 543.

The amendment in question, while it in terms provides that article 4 of the constitution be amended by adding thereto a section, amends, in fact, the provisions of article 6, relating to the judicial department.

Under sections 1, 21 and 28 of article 6 of the constitution the office of justice of the peace belongs to the judicial department of the State, as defined by the constitution, and for that reason the office cannot be abolished without violating that article. *Phillips* v. *Quick,* 63 Ill. 445; *People* v. *Palmer,* 64 id. 41.

In the same way that articles 4 and 6 are amended section 12 of article 9 is amended,—by an express provision. Section 12 of article 9 expressly provides that "no city, township, school district or other municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness." Under this provision it has been expressly held by this court that "the value" here referred to is not to be ascertained by the assessment made by the local authorities, but the assessment as made by the State Board of Equalization. *Culbertson* v. *Fulton,* 127 Ill. 30; *Lussem* v. *Sanitary District,* 192 id. 404.

It has also been decided by this court that under the law requiring the assessor to first ascertain the full value, and to divide this value by five in order to ascertain the assessed value, the value referred to in the constitutional provision is not the full value, but the assessed value. *Chicago* v. *Fishburn,* 189 Ill. 367.

By the amendment in question, express authority is given to the legislature to provide, by a law or laws to be passed under it, that the city of Chicago may "become indebted to an amount * * * (including existing indebtedness, etc.,) in the aggregate not exceeding five percentum of the full

value of the taxable property within its limits, as ascertained by the last assessment, either for State or municipal purposes, previous to the incurring of such indebtedness."

WILLIAM E. CHURCH, GEORGE A. MASON, LACKNER, BUTZ & MILLER, and JULIUS & LESSING ROSENTHAL, for appellee Mary L. Colbert, coming in by leave of court:

The constitution can be neither revised nor amended except in the manner prescribed by itself, and the power which it has conferred upon the legislature in reference to proposed amendments, as well as to calling a convention, must be strictly pursued. *Livermore* v. *Waite,* 102 Cal. 113; *Collier* v. *Frierson,* 24 Ala. 100; *Paving Co.* v. *Hilton,* 69 Cal. 479; *Koehler* v. *Hill,* 60 Iowa, 543; *State* v. *Powell,* 77 Miss. 542.

Under the method of amending the constitution by convention the entire sovereignty of the people is represented in the convention. The character and extent of a constitution that may be framed by that body is freed from any limitations other than those contained in the constitution of the United States. *Livermore* v. *Waite,* 102 Cal. 113.

The power of the legislature to initiate any change in the existing organic law is, however, of greatly less extent, and, being a delegated power, is to be strictly construed under the limitations by which it has been conferred. *Livermore* v. *Waite,* 102 Cal. 113; *Koehler* v. *Hill,* 60 Iowa, 543; *State* v. *Powell,* 77 Miss. 542.

In submitting propositions for the amendment of the constitution the legislature is not in the exercise of its legislative power or of any sovereignty of the people that has been entrusted to it, but is merely acting under a limited power conferred upon it by the people. *Livermore* v. *Waite,* 102 Cal. 113.

Every requisition which is demanded by the instrument itself must be observed, and the omission of any one is fatal to the amendment. *Collier* v. *Frierson,* 24 Ala. 100; *Paving Co.* v. *Hilton,* 69 Cal. 479; *State* v. *Powell,* 77 Miss. 542.

This constitutional amendment, in authorizing the General Assembly (1) to create municipal courts, (2) to abolish the offices of justices of the peace and police magistrates, (3) to limit the jurisdiction of justices of the peace to the territory outside of the city of Chicago, (4) to prescribe the jurisdiction and practice of said municipal courts, contravenes article 6 of the constitution.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the appellee, a resident and tax-payer of the city of Chicago, in the circuit court of Cook county, for and on behalf of himself as well as all other tax-payers in the city of Chicago who might choose to join therein as parties complainant, against the city of Chicago, for an injunction restraining the city of Chicago, its officers and agents, including its city council, from appropriating or causing to be paid out of the treasury of said city any moneys whatever on account of the municipal court of Chicago, established by an act entitled "An act in relation to a municipal court in the city of Chicago," approved May 18, 1905, (Laws of 1905, p. 158,) and consented to by the legal voters of the city of Chicago at the general election held in said city on the first Tuesday after the first Monday of November, 1905. A demurrer was interposed to the bill, which was overruled, and the defendant having elected to stand by its demurrer, a decree was entered in accordance with the prayer of the bill, and the city of Chicago has prosecuted an appeal to this court to reverse said decree.

The main contention of the appellee is that said Municipal Court act is void by reason of the fact that the constitutional amendment of 1904, known as section 34 of article 4, in which must be found the legislative authority to pass said act, is invalid, because, as it is alleged, said constitutional amendment was not proposed by the General Assembly in accordance with the provisions of section 2 of article 14 of the constitution, in this: that the General Assembly, in pro-

posing said amendment, proposed amendments to more than one article of the constitution at the same session, which is prohibited by said section 2 of article 14, which prohibition reads as follows: "The General Assembly shall have no power to propose amendments to more than one article of this constitution at the same session."

The amendment of 1904 is long and somewhat complicated, but it, in short, provides the General Assembly shall have power, subject to the conditions and limitations therein contained, (1) to pass any law, local, special or general, providing a scheme or charter of local municipal government for the territory now or hereafter embraced within the limits of the city of Chicago; (2) to pass laws for consolidating in the municipal government of Chicago the powers now vested in the several municipal governments within said territory and for the assumption of their duties and liabilities, and in the event of the city's becoming liable for the indebtedness of said municipal corporations, the city may become indebted in the aggregate not to exceed five percentum of the full value of the taxable property within said territory, to be ascertained by the last assessment either for State or municipal purposes; (3) and may provide for the assessment of property and for the levy and collection of taxes for corporate purposes in accordance with the principles of equity and uniformity prescribed by this constitution; (4) may abolish all offices the functions of which shall be otherwise provided for; (5) may provide for the annexation of territory to or disconnection of territory from said city, by the consent of a majority of the legal voters thereof and of the territory affected; (6) may create municipal courts and provide for their jurisdiction and practice, and abolish the offices of justices of the peace, police magistrates and constables in the city of Chicago, and limit the jurisdiction of justices of the peace in Cook county to territory outside the city of Chicago; (7) may pass all laws requisite to effectually provide a complete system of local municipal gov-

ernment in and for the city of Chicago; (8) provides for a referendum, and that nothing in the amendment shall be construed to repeal, amend or affect section 4 of article 11 of the constitution.

It must be conceded that changes are wrought in at least two articles of the constitution of 1870 by the amendment of 1904 in addition to the changes made in article 4, to which article the amendment is an express amendment,—that is, the offices of justices of the peace, police magistrates and constables, created by sections 1, 21 and 28 of article 6, may be abolished in the city of Chicago if municipal courts are created in said city and the jurisdiction of justices of the peace in Cook county limited to territory outside of the city of Chicago; and the uniformity in jurisdiction and practice in courts of the same grade, provided for by section 29 of article 6, is abrogated in the city of Chicago; and section 12 of article 9 is changed so that the city of Chicago may become indebted to an amount aggregating five percentum of the *full* value of the taxable property within its limits as ascertained by the last assessment, either for *State or municipal purposes,* previous to the incurring of such indebtedness, instead of not to exceed five percentum of the value of the taxable property therein to be ascertained by the last assessment for State and county purposes previous to the incurring of such indebtedness. The question is therefore presented for decision whether the changes made in articles 6 and 9 of the constitution by the amendment of 1904, are, as is contended by counsel for appellant, such as may be made as merely incidental to the object sought to be accomplished by the amendment, or whether they are, as is contended by counsel for appellee, such amendments to those articles as are prohibited by section 2 of article 14 unless proposed by the General Assembly as express amendments to each of said articles.

The constitution contains fourteen articles, three special sections and one schedule. Each article is devoted to a par-

ticular subject, article 4 being devoted to the "Legislative Department," article 6 to the "Judicial Department" and article 9 to the "Revenue." We think it plain that the purpose of section 2 of article 14, that "amendments to more than one article" shall not be proposed by the General Assembly at the same session, was incorporated in the constitution by its framers to the end that the people might not be misled and confused in voting upon a proposition to change the constitution by having proposed to them by the General Assembly at the same session amendments to different articles of the constitution,—that is, that the amendments proposed at one session should be in express form and confined to some particular subject contained in some one of the articles of the constitution, and that said section 2 was not intended as a prohibition upon the proposal of amendments to an article of the constitution unless such amendments were of a character that they could, in their effect, be confined solely to the article sought expressly to be amended. In other words, that said section 2 of article 14 was intended to prohibit the proposal of express amendments to more than one article of the constitution at the same session, and was not intended to prevent implied amendments or changes which were necessarily worked in other articles of the constitution by the express amendments of a particular article of the constitution. Any other view would be so narrow as to prohibit the General Assembly in many, if not in all, cases, from proposing amendments to a particular article of the constitution, as the several articles of the constitution are so far connected and dependent upon each other that a change in any article, generally, if not universally, has the effect to produce changes of more or less importance in one or more of the articles of the constitution other than that which is expressly amended.

In *People* v. *Rose,* 203 Ill. 46, in construing the constitutional provision fixing the time when changes in the Supreme Court districts might be made, which provision reads,

"the boundaries of the districts may be changed at the session of the General Assembly next preceding the election for judges therein, and at no other time," on page 50 the court said: "The only limitation found in this provision as to the time when the boundaries of the districts may be changed, is, that the change must be made at the session of the General Assembly next preceding the election for judges therein. Under the constitution a judge of the Supreme Court for the Fourth District is to be elected on the first Monday of June, 1903, and the act changing the boundaries of said district was passed at the session of the General Assembly next preceding the election for judge in said district, and as we view the matter the General Assembly at that session was authorized to make such change, (*People* v. *Rose,* 166 Ill. 422,) and it seems too plain for argument that unless we are right in so holding, the boundaries of the fourth district can never be changed unless the limitation that the change must be made at the session of the General Assembly next preceding the election for judges therein is to be entirely eliminated from the constitution."

In the amendment of statutes and constitutions a distinction between express amendments and amendments by implication has been repeatedly recognized by the courts, and such distinction is well understood. By section 13 of article 4 it is provided that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." Subsequent to the adoption of the constitution it was contended, in a number of cases, that this provision embraced enactments which amended prior laws by implication. That view, however, was not adopted by the court. In *People* v. *Wright,* 70 Ill. 388, on page 396, the court, in construing the above constitutional provision, said: "No particular section of any act purports to be amended by this act. All that can be said of it in this respect is, that by implication it amends the municipal charters of cities. It cannot be held

that this clause of the constitution embraces every enactment which, in any degree, however remotely it may be, affects the prior law on a given subject, for to so hold would be to bring about an evil far greater than the one sought to be obviated by this clause." To the same effect are *Timm* v. *Harrison,* 109 Ill. 593; *School Directors* v. *School Directors,* 135 id. 464; *People* v. *Loeffler,* 175 id. 585; *People* v. *Knopf,* 183 id. 410.

The Supreme Court of Michigan, speaking through Judge Cooley, in *People* v. *Mahaney,* 13 Mich. 481, in considering the effect of a similar constitutional provision, on page 496, said: "If, whenever a new statute is passed, it is necessary that all prior statutes modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be re-published at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and re-publish various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the State, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title. This constitutional provision must receive a reasonable construction, with a view to give it effect."

In *Huston* v. *Clark,* 112 Ill. 344, in considering the effect of the amendment to the constitution known as section 31 of article 4 on other provisions of the constitution, the court, on page 349, said: "The special amendment of the constitution adopted in 1878, so far as it invades the former limitations of the constitution, must prevail, and such limitations

are not applicable to the subject matter of this special amendment."

And in *Village of Hyde Park* v. *Spencer,* 118 Ill. 446, the court said (p. 452) : "An amendment to section 31 of article 4 of the constitution was adopted by a vote of the people in 1878. That section, as thus amended, reads as follows : 'The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees, for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby.' In *Moore* v. *People,* 106 Ill. 376, in discussing the constitutionality of the Drainage act of 1879, we said : 'The act under which the proceedings were had was passed under the authority of this amendment and authorized by it, and if sections 1, 9 and 10 of article 9 ever had any bearing upon an assessment of this character after this amendment became a part of the organic act, it would control, regardless of the provisions of the original constitution.' "

And in *Wabash Railroad Co.* v. *Coon Run Drainage and Levee District,* 194 Ill. 310, on page 319, the court said : "Section 31 of article 4 of the constitution of 1870, as amended, under which the statute authorizing the appellee district to become incorporated was enacted, is paramount to constitutional limitations incorporated in the constitution as originally framed, with which it is in conflict. (*Huston* v. *Clark,* 112 Ill. 344.) To the extent the amendatory section invades the limitations and safeguards erected by said section 13 of article 2 and section 14 of article 11 of the constitution, for the safety and preservation of private property, the provisions of the amended section must prevail, but in all other respects those limitations and safeguards remained

unimpaired and in full force and vigor as part of the organic law of the State."

It is in view of these holdings, settled beyond all question in this State, that a statutory or constitutional amendment has the effect to bring into harmony with itself the previous provisions of the statute or constitution amended, in so far as the former statute or constitution is in conflict with the amendment.

The right to propose amendments to the constitution is not the exercise of legislative power by the General Assembly in its ordinary sense, but such power is vested in the legislature only by the grant found in the constitution, and such power must be exercised within the terms of the grant. In *Oakland Paving Co.* v. *Hilton,* 69 Cal. 479, in speaking of the power of the General Assembly to propose amendments to the constitution of the State of California, the court said: "The power given to the legislature is a grant of power. It has it not without the constitutional provision. The grant is given to be exercised in the mode conferred on the legislature by the constitution. It is so limited by the people acting in the exercise of their highest sovereign power. In such case the mode is the measure of the power." And in *Collier* v. *Frierson,* 24 Ala. 108: "We entertain no doubt that, to change the constitution in any other mode than by a convention, every requisite which is demanded by the instrument itself must be observed, and the omission of any one is fatal to the amendment." And in *Livermore* v. *Waite,* 102 Cal. 117, the court said: "In submitting propositions for the amendment of the constitution the legislature is not in the exercise of its legislative power or of any sovereignty of the people that has been entrusted to it, but is merely acting under a limited power conferred upon it by the people."

The language measuring the power of the General Assembly of this State to propose amendments to the constitution is found in section 2 of article 14, and is as follows: "Amendments to this constitution may be proposed in either

house of the General Assembly, and if the same shall be voted for by two-thirds of all the members elected to each of the two houses, such proposed amendments, together with the yeas and nays of each house thereon, shall be entered in full on their respective journals; and said amendments shall be submitted to the electors of this State for adoption or rejection, at the next election of members of the General Assembly, in such manner as may be prescribed by law. The proposed amendments shall be published in full at least three months preceding the election, and if a majority of the electors voting at said election shall vote for the proposed amendments, they shall become a part of this constitution." This language is broad and comprehensive, and confers upon the General Assembly ample power to propose any and all amendments which it may deem proper to any or all of the articles of the constitution. The power thus conferred is unlimited except by the last clause of said section 2, which is: "The General Assembly shall have no power to propose amendments to more than one article of this constitution at the same session, nor to the same article oftener than once in four years."

The limitations thus imposed upon the General Assembly to propose amendments should not be so strictly construed, as has been heretofore suggested, as to prevent amendments, by implication, to articles of the constitution not expressly sought to be amended, and thereby in many, if not in all, instances, destroy the broad power to propose amendments granted to the General Assembly. Neither should those limitations be so liberally construed as to destroy them as limitations upon the power of the General Assembly to propose amendments, and thereby, under the guise of an amendment or amendments to an article of the constitution, permit the General Assembly to change other articles of the constitution in matters entirely foreign to the subject matter of the proposed amendment sought to be engrafted upon a particular article of the constitution. We think, when it is remembered

that the several subjects covered by the constitution are set down in separate articles and the General Assembly is prohibited from proposing amendments to more than one article at the same session, that it is obvious that the amendments proposed by the General Assembly to a particular article must relate to and be germane to the subject matter of the article proposed to be amended, and that if the effect of the amendment of a particular article is to change other articles of the constitution, and such changes are germane and only incidental to the object sought to be accomplished by the express amendment, then the fact that articles of the constitution other than the article expressly amended are changed does not render the express amendment invalid by reason of the fact that other articles of the constitution are changed to bring the constitution into a harmonious whole, after an amendment has been incorporated into the constitution as a part of a particular article thereof. On the other hand, if the effect of the amendment of a particular article of the constitution is to work changes in other articles of the constitution, and there is no connection between the object sought to be accomplished by the express amendment to a particular article and the changes wrought in other articles of the constitution,—that is, the changes worked, by implication, in other articles than that expressly amended are entirely foreign to the object sought to be accomplished by the express amendment,—a different result would follow. There it would be clear there was an attempted evasion on the part of the General Assembly of the provisions of section 2 of article 14, and the court would be authorized, in such case, in holding that the proposed amendments, although made in the form of an amendment or amendments to a particular article, were amendments to more than one article of the constitution proposed at the same session, and it would then be the duty of the court to hold the express amendment invalid. This should not be done, however, unless it clearly appeared that the limitations imposed upon the grant of

power to the General Assembly to propose amendments to the constitution had been abused, as the limitations imposed upon the power of the General Assembly to propose amendments should not be so construed as to defeat the power itself, except in a case falling clearly within the terms of the limitation.

In *People* v. *Rose, supra,* it was contended that the effect of the act of 1903 was not only to change the boundaries of the fourth Supreme Court district, but also the boundaries of the second, fifth and sixth Supreme Court districts, and it was urged under the constitution the boundaries of the second, fifth and sixth districts could not be changed except at the session of the General Assembly next preceding the election for judges in those districts, and as there were no elections in said districts in 1903, the act was void. On page 51 the court said: "While it seems clear that the General Assembly would have been powerless to pass an act changing the boundaries of the second, fifth and sixth districts, or any one of them, at the last session, that session not being the session next preceding the election for judges in said districts, * * * yet if the General Assembly had power, as we think it did have, at its last session, to change the boundaries of the fourth district, it had power to make such incidental changes in the second, fifth and sixth districts as might be necessary to accomplish the change in the fourth district, as no change could be made in the fourth district without changing some one or more of the other districts, and the principle is well settled that where a general power is conferred upon the General Assembly by the constitution, or a duty imposed, it also gives, by implication, every particular power necessary for the exercise of the one or the performance of the other." And in *Field* v. *People,* 2 Scam. 79, on page 83, it was said: "That other powers than those expressly granted may be, and often are, conferred by implication, is too well settled to be doubted. Under every constitution the doctrine of implication must be resorted to

in order to carry out the general grants of power. A constitution cannot, from its very nature, enter into a minute specification of all the minor powers naturally and obviously included in and flowing from the great and important ones which are expressly granted. It is therefore established as a general rule, that when a constitution gives a general power or enjoins a duty, it also gives, by implication, every particular power necessary for the exercise of the one or the performance of the other." And in *City of Chicago* v. *Stratton,* 162 Ill. 494, on page 503, it was said: "A grant of legislative power to do a certain thing carries with it the power to use all necessary and proper means to accomplish the end."

It is urged by the appellant the question here presented is not a new one in this court, but that the principles here contended for by it have been fully recognized and sustained by this court in *Huston* v. *Clark, supra, Village of Hyde Park* v. *Spencer, supra, Wilson* v. *Board of Trustees,* 133 Ill. 443, and *Wabash Railroad Co.* v. *Coon Run Drainage and Levee District, supra,* those cases being cases involving the construction of the amendment of 1878. The principal question here raised does not appear to have been considered in those cases in the precise form in which it is here presented. The conclusions there arrived at, however, could not have been reached unless the court was of the opinion that the General Assembly had the power to propose express amendments to one article of the constitution, which, by implication, might work changes or which might entirely abrogate provisions found in other articles than the article expressly amended, and we think those cases for that reason strongly sustain the position of appellant.

In *People* v. *Sours,* 31 Col. 369, (102 Am. St. Rep. 34,) the Supreme Court of Colorado had under consideration the precise question presented here, and by a divided court reached the conclusion that under a provision of the Colorado constitution similar to section 2 of article 14 of the constitution of this State, the limitation thus imposed upon the

grant of power to the General Assembly of that State to propose express amendments did not apply to implied amendments which affected other articles of the constitution not sought to be changed by express amendment, which were gemane to the object sought to be accomplished by the express amendment.

In *State* v. *Timme,* 54 Wis. 318, an amendment proposed by the legislature and ratified by the people was attacked upon the ground, among others, that it contained several objects and propositions which had not been submitted separately to the people, as required by the constitution of that State. The court, on page 335, said: "This provision can have but two constructions: First, it may be construed as is contended for by the learned counsel, who contends that the amendment under controversy was not properly submitted; that every proposition in the shape of an amendment to the constitution which, standing alone, changes or abolishes any of its present provisions or adds any new provision thereto shall be so drawn that it can be submitted separately and must be so submitted. Such a construction would, we think, be so narrow as to render it practically impossible to amend the constitution, or, if not practically impossible, it would compel the submission of an amendment which, although having but one object in view, might consist of considerable detail, and each separate provision, though all promotive of the same object and necessary to the perfection and practical usefulness thereof if adopted as a whole, in such form that a defeat of one of its important matters of detail might destroy the usefulness of all the other provisions when adopted. Take the case.as presented by the amendment under consideration. The learned counsel admits that the proposition to change from annual to biennial sessions is so intimately connected with the proposition to change the tenure of office of members of the assembly from one year to two years, that the propriety of the two changes taking place, or that neither should take place, is so apparent that

to provide otherwise would be absurd. * * * We think amendments to the constitution, which the section above requires shall be submitted separately, must be construed to mean amendments which have different objects and purposes in view. In order to constitute more than one amendment the propositions submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other. Tested by this rule, the propositions submitted to the electors contained but one amendment. It is clear that the whole scope and purpose of the matter submitted to the electors for their ratification was the change from annual to biennial sessions of the legislature. It was so spoken of by the legislative bodies which passed it as well as by the electors who ratified it. To make that change it was necessary, in order to prevent the election of members of assembly half of whom would never have any duties to perform, that a change should be made in their tenure of office as well as in the time of their election; and the same may be said as to the change of the tenure of office of the senators. * * * The direction in the constitution requiring separate amendments to be submitted separately has no efficacy in determining what constitutes an amendment as distinguished from what constitutes two or more amendments; and as the word 'amendment' is clearly susceptible of a construction which would make it cover several propositions, all tending to effect and carry out one general object or purpose and all connected with one subject, as well as of the construction that every proposition which effects a change in the constitution or adds to or takes from it, is an amendment."

The constitution of 1870, since its adoption, has had engrafted upon it six amendments: (1) The amendment of section 31 of article 4, adopted in 1878; (2) the amendment of section 8 of article 10, adopted in 1880; (3) the amendment of section 16 of article 5, adopted in 1884; (4) the separate section relating to the letting of convict labor,

adopted in 1886; (5) the amendment of article 9 by the addition of section 13, adopted in 1890; and (6) the amendment of article 4 by the adoption of section 34, adopted in 1904, and which is the amendment now under consideration. All of these amendments were proposed by the General Assembly, and at least three of said amendments adopted prior to the amendment of 1904, as proposed and adopted, worked changes in articles of the constitution other than the articles to which they expressly were proposed as amendments. The amendment of 1878 was expressly made to section 31 of article 4. It, however, effected changes in section 13 of article 2, sections 1, 9 and 10 of article 9, and section 14 of article 11. (*Moore* v. *People,* 106 Ill. 376; *Huston* v. *Clark, supra; Wilson* v. *Board of Trustees, supra; Wabash Railroad Co.* v. *Coon Run Drainage District, supra.*) The amendment of 1880 was expressly made to section 8 of article 10. It, however, effected changes in section 28 of article 4. (*People* v. *Supervisors,* 100 Ill. 495.) And the amendment of 1884 was made to section 16 of article 5. It, however, effected changes in sections 12, 13, 16 and 18 of article 4. We have here, therefore, a legislative construction as to the true interpretation of section 2 of article 14 of the constitution, to the effect that amendments may be proposed which, by implication, will effect changes in other articles of the constitution than the article expressly amended; and the rule is, that uniform, continued and contemporaneous construction given by the legislature to a constitutional provision and generally recognized as its meaning and interpretation, affords a strong presumption that such construction is correct. *Bunn* v. *People,* 45 Ill. 397; *Boehm* v. *Hertz,* 182 id. 154.

In the *Boehm case,* on page 164, it is said: "It is a principle of construction of a constitution that it is proper to take into consideration the uniform, continued and contemporaneous construction given by the legislature and generally recognized, as to its meaning or intention, and such

contemporaneous construction affords a strong presumption that it rightly interprets the meaning and intention."

Judge Cooley, in his work on Constitutional Limitations, (2d ed. p. 66) says: "An important question which now suggests itself is this: How far the contemporaneous construction, or the subsequent practical construction of any particular provision of the constitution, is to have weight with the courts when the time arrives at which a judicial decision becomes necessary. Contemporaneous construction may consist simply in the understanding with which the people received it at the time, or in the acts done in putting it in operation and which necessarily assume that it is to be construed in a particular way. In the first case it can have very little force, because the evidences of the public understanding, when nothing has been done under the provision in question, must always necessarily be vague and indecisive. But where there has been a practical construction, which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist. Indeed, where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the constitution and by those who had opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention. Especially where this has been given by officers in the discharge of their duty, and rights have accrued in reliance upon it which would be divested by a decision that the construction was erroneous, the argument *ab inconvenienti* is sometimes allowed to have very great weight."

The remarks of Judge Cooley, above quoted, apply with great force to the amendment of 1878. Judges CRAIG and SCHOLFIELD were both members of the constitutional convention of 1870 and were members of this court at the time

the amendment of 1878 was proposed and adopted, and Judge CRAIG wrote the opinion in the *Moore case* and Judge SCHOLFIELD that in the *Wilson case,* construing and interpreting that amendment, and it can hardly be presumed that either of these painstaking and able men was not familiar with section 2 of article 14 of the constitution and its legal effect at the time of the proposal and adoption of said amendment and at the time they prepared opinions in those cases, as, prior to the adoption of the amendment, in *Updike* v. *Wright,* 81 Ill. 49, it had been held an act of the legislature passed in pursuance of the power conferred upon the General Assembly by section 31 of article 4, prior to its amendment, was void in so far as it attempted to confer powers upon drainage districts to construct drains, ditches, etc., by special assessments, and the amendment of 1878 was proposed and adopted to remedy the defect found in the constitution as pointed out in the *Updike case.*   Subsequent to the adoption of the amendment of 1878 the General Assembly passed two comprehensive drainage acts, by virtue of which numerous drainage and levee districts have been organized throughout the State.   Improvements have been made and obligations incurred by the said districts, many of which obligations can only be paid by special assessments heretofore or hereafter to be levied upon the lands benefited by the improvements made by drainage or levee districts organized under said acts, and at this late date, and after said amendment has been for more than twenty-five years considered by the people and held by the courts of last resort of the State to be a valid amendment to the constitution, it ought not now to be avoided on the ground that it effected, by implication, changes in other articles of the constitution than that expressly amended.  Such, however, would be the effect of this decision if the contentions of the appellee were sustained in this case,—a result which ought not to be brought about unless it is plain that the amendment of 1904 is clearly and unquestionably invalid. *Burritt* v. *Commissioners,* 120 Ill. 322.

In view of what has been said, we are of the opinion the question here raised is narrowed to the question whether the changes wrought by the amendment of 1904 in articles 6 and 9 are germane to the purpose sought to be accomplished by the amendment of 1904.

It is clear that the amendment of 1904 embraces but one subject, viz., the establishment of local municipal government in the city of Chicago, and as the amendment was designed to confer legislative power upon the General Assembly to establish local municipal government in the city of Chicago, we think the amendment was properly proposed to article 4, which is the article of the constitution pertaining to the law-making power of the State, and is the article which contains the prohibition found in the constitution against the enactment of special legislation, which is the prohibition which mainly stood in the way of the passing by the General Assembly of special laws, the enactment of which is necessary to the establishment of local municipal government in Chicago. Is, therefore, the creation of a municipal court in the city of Chicago germane to the establishment of a local municipal government for the city of Chicago?

We think this question must be answered in the affirmative. Literally, "germane" means "alike," "closely allied," and when applied in the sense in which the word is here used it signifies that the changes in the articles amended by implication are such as are calculated to promote the object and purpose sought to be accomplished by express amendment. Section 13 of article 4 of the constitution provides that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title," and in construing this provision it has been held that the several provisions of an act of the General Assembly are germane to the subject expressed in its title if they relate to that subject, or in some reasonable way are connected therewith or are auxiliary to such subject or are incident thereto. In *Boehm* v. *Hertz,*

*supra,* on page 156, it was said: "The limitation of the above provisions of the constitution goes no further than to declare that no matters are properly included in the act which are not germane to its title. Where all the provisions of the act relate to a particular subject indicated in its title and are a part of or incident to it or in some reasonable sense connected with or auxiliary to the object in view, it cannot be held such provisions are not within the title of the act." And in *Hudnall* v. *Ham,* 172 Ill. 76, on page 83, it is said: "In determining whether the provision in question is embraced within the title of the act a liberal construction is to be given to the constitution, and unless the provision contains matter incongruous and having no proper connection or relation to the title it will not be void, as not embraced therein."

In the main, the established rules of construction applicable to statutes are also applied to the construction of constitutions, (*People* v. *Potter,* 47 N. Y. 375,) and we see no reason why the same rules of construction should not be applied here in determining whether or not the changes made in articles 6 and 9 of the constitution are germane to the amendment of 1904 and to the object sought to be accomplished by that amendment, as have been applied in determining whether a statute is in conflict with section 13 of article 4 of the constitution.

In *O'Leary* v. *County of Cook,* 28 Ill. 534, it was held a provision contained in "An act to amend an act entitled 'An act to incorporate the Northwestern University,'" prohibiting the sale of spirituous liquors within four miles of the university, was not in conflict with the provisions of the constitution of 1848 that "no private or local law shall embrace more than one subject, and that shall be expressed in the title," on the ground its purpose was to keep far away from the young men who were students at the university the temptation to intemperance and its attendant vices. The court, on page 538, said: "The object of the charter was to create an

institution for the education of young men, and it was competent for the legislature to embrace within it everything which was designed to facilitate that object.  Every provision which was intended to promote the well-being of the institution or its students was within the proper subject matter of that law.  We cannot doubt that such was the single design of this law.  Its purpose was to keep far away from the members of the institution the temptation to intemperance and its attendant vices.  *  *  *  We entertain no doubt of the constitutionality of the enactment, and the judgment must be affirmed."

In *Neifing* v. *Town of Pontiac,* 56 Ill. 172, under "An act to extend the corporate powers of the town of Pontiac," it was held a provision forbidding beer to be brought within three miles of the town "for the purpose of trafficking therein in any way whatever," was sufficiently germane to the subject expressed in the title of the act, and therefore free of constitutional objection.

In *Potwin* v. *Johnson,* 108 Ill. 70, the constitutionality of the provisions of "An act to provide for the incorporation of cities and villages" was assailed on the ground that the title of the act made no reference to the provision therein contained conferring power upon county courts to entertain proceedings and render judgments in cases of special assessments.  The court held the matter referred to was properly included within the title of the act, and was germane and incidental to the general object of municipal incorporation.

In *David & Bro.* v. *Woolnough,* 9 Iowa, 104, there was called in question the validity of an act entitled "An act for revising and consolidating the laws incorporating the city of Dubuque and to establish a city court therein."  The contention was made that the title contained more than one subject, and that therefore it violated section 26 of article 3 of the constitution of Iowa in force when it was adopted. The court said (p. 107) : "We do not think that this method of legislation violates the article referred to.  The conclud-

ing part of the title might have been omitted, for that preceding was sufficiently broad and expressive to authorize a provision for a city court. A law might be invalid for want of compliance with this section if it contained matter not expressed in the title, but it would not be where the title contains more than is necessary to point out the object of the law. The city court provided for in this act is not an unusual tribunal, certainly, in such municipalities. It is entirely germane with the object of the act. The object was to give to the citizens of the locality named therein a city government, to provide for a power to make, declare and execute the laws, and this court is but a part of the machinery to carry out this object."

In *People* v. *Hurst,* 41 Mich. 328, the question was raised whether the recorder's court could be lawfully established and regulated in an act entitled "An act to revise the charter of the city of Detroit." The court held it could be, saying: "We think it cannot be said the increase of jurisdiction of this court can be held beyond the purview of a city charter if the court could be provided for at all. But the court, in some form, had always been regulated by the city charter before the constitution of 1850 was adopted, and must be regarded as not improperly included. We think that the court, so far as it could be entrusted with jurisdiction at all, was lawfully provided for in the charter and did not need a separate statute."

If it be germane to the establishment of local municipal government in the city of Chicago to establish a municipal court, we are unable to see why it is not germane to that object to abolish the offices of justices of the peace, police magistrates and constables in said city, and to limit the jurisdiction of justices of the peace in Cook county to territory outside of the city. The municipal city court created is designed to occupy the field in jurisprudence heretofore occupied by justices of the peace and police magistrates in said city, and clearly if it is germane to the establishment of lo-

cal municipal government in said city to create a municipal court, it is equally germane to abolish the courts already existing in said city and which are to be superseded by said municipal court, otherwise there would exist in the city of Chicago courts of conflicting jurisdiction, the effect of which would be to obstruct the administration of, rather than to administer, the law in said city; and if it is germane to the establishment of local municipal government in said city to abolish justices of the peace, police magistrates and constables in the city and those offices are not abolished in the county outside of the city, their jurisdiction necessarily would be confined to the territory of the county of Cook outside of the city without any further action by the legislature. It would seem equally clear that the obtaining of revenue with which to pay the indebtedness of the city and with which to maintain a local municipal government in the city of Chicago was germane to the organization of such municipal government, as local municipal government in said city could not exist without revenue with which to pay its existing indebtedness and to maintain in the city local municipal government. If it be conceded that local municipal government is the object sought to be accomplished by the amendment of 1904, as it must be, then to create a municipal court, to abolish courts whose jurisdiction conflict with said court and to provide for raising revenue to supply the city's needs must, we think, also be conceded to be matters germane to that object. We therefore conclude that the amendment of 1904 is valid, and that the provisions of the constitution, in force prior to its adoption, which are in conflict with said amendment must give way before the amendment.

The Municipal Court act, hereinbefore referred to, consists of sixty-seven sections, and creates in and for the city of Chicago a court of record known as the "Municipal Court of Chicago." The city is divided into five districts, and the election of a chief justice and twenty-seven associate justices, who are to hold their offices, respectively, for the period

of six years, is provided for. A clerk and bailiff are to be elected and deputy clerks and bailiffs appointed, and the jurisdiction and practice of the court are established and regulated. Many of the provisions found in the act, especially those relating to practice, are new in this State, and while the constitutionality of a number of the provisions of the act have been called in question in the briefs filed, but little, if anything, was said with reference thereto upon the oral argument,—which argument was participated in by able counsel and extended beyond the time prescribed by rule of court,—it being substantially conceded upon such argument that the controlling question in the case was, is the amendment of 1904 a valid amendment? We have examined the Municipal Court act with care and carefully considered all that has been presented in the briefs by counsel, and have reached the conclusion that if the amendment of 1904, in pursuance of which the act was passed, is a valid constitutional amendment, as we are of the opinion it is, said act in its main features is a valid enactment, and that in no event would we be justified in holding it, as a whole, unconstitutional. While there may be some of its features which eventually may be found to be unconstitutional, we think it is better to consider those questions as they arise in due course of business, and to decide them upon fuller argument than has been presented in the briefs filed in this case.

The court, therefore, being of the opinion that the amendment of 1904 is a valid amendment of the constitution of 1870, and that it conferred upon the General Assembly ample power to pass the Municipal Court act, which act became a binding enactment upon being consented to, as it has been, by the legal voters of the city of Chicago, and that the circuit court erred in overruling the demurrer of the city to the bill of complaint filed herein, the decree of the circuit court will be reversed and the case remanded to that court, with directions to sustain the demurrer to the bill.

*Reversed and remanded, with directions.*