THE WABASH RAILROAD COMPANY

*v.*

THE COON RUN DRAINAGE AND LEVEE DISTRICT.

*Opinion filed December 18, 1901—Rehearing denied February 17, 1902.*

1. CONSTITUTIONAL LAW—*extent of power conferred on legislature by provision of constitution referring to drainage.* Section 31 of article 4 of the constitution, as amended in 1878, authorizing the General Assembly to pass laws for the organization of drainage districts and the construction of ditches by owners of lands across the lands of others, carries with it the power to enact laws authorizing the condemnation of the lands of such other owners.

2. SAME—*provisions of section 13 of article 2, and section 14 of article 11, of constitution, are self-executing.* The provision of section 13 of article 2 of the constitution, that private property shall not be taken or damaged for public use without just compensation, and of section 14 of article 11, that the right of trial by jury shall be inviolate in all trials of claims for compensation, where, in the exercise of the right of eminent domain, a corporation is interested on either side, became operative upon the adoption of the constitution, without the aid of legislation.

3. SAME—*constitutional amendment is paramount to conflicting limitations in original instrument.* To the extent the amendment of section 31 of article 4 of the constitution, authorizing the organization of drainage districts, invades the limitations and safeguards erected by section 13 of article 2 and section 14 of article 11 of the constitution, for the safety and preservation of private property, the provisions of the amendment must prevail, but in all other respects those limitations and safeguards remain unimpaired.

4. SAME—*drainage amendment does not impair provisions of section 13 of article 2 and section 14 of article 11.* The guaranties of section 13

of article 2 of the constitution, that compensation to be paid for property condemned shall be ascertained by a jury, and of section 14 of article 11, that the right of trial by jury shall be held inviolate in all trials of claims for compensation where a corporation is interested, either as plaintiff or defendant, are not impaired by section 31 of article 4, concerning drainage, as amended in 1878.

5. SAME—*the right to participate in selection of jury is an essential element of trial by jury.* It is essential to the legal organization of a jury, within the meaning of section 13 of article 2 and section 14 of article 11 of the constitution, that the owner whose property is to be taken for public use at a price to be fixed by such jury shall be notified that a jury is to be empaneled, and that he be permitted to be present and participate in the selection of the jury and to interpose challenges for cause.

6. SAME—*provisions of section 16 of Levee act for empaneling jury are unconstitutional.* The provisions of section 16 of the Levee act of 1879, (Laws of 1879, p. 125,) in so far as they authorize the court to empanel a jury in drainage proceedings without notice to or participation by the owners of the lands condemned, are in violation of section 13 of article 2 and section 14 of article 11 of the constitution, and the body of men thus brought together do not constitute a legal jury.

7. SAME—*provisions of section 17 of Levee act for ascertainment of compensation are unconstitutional.* The course of proceeding directed by section 17 of the Levee act of 1879 to be pursued in determining compensation is not the judicial ascertainment of such compensation as is contemplated by the constitutional provisions bearing on the subject; and such section is, in that respect, in violation of the constitution, and inoperative and void.

8. SAME—*right to object to jury's report is not equivalent to a trial by jury.* The provisions of sections 20 and 21 of the Levee act of 1879, granting the property owner the right to appear before the jury and object to their report, do not secure to such owner a fair and impartial judicial ascertainment of the just compensation to be paid for his property that is to be appropriated to the uses of the drainage district.

WILKIN, C. J., and CARTER and HAND, JJ., dissenting.

APPEAL from the County Court of Morgan county; the Hon. DAVID F. KING, Judge, presiding.

C. N. TRAVOUS, for appellant.

MORRISON, WORTHINGTON & REEVE, and H. M. TICKNOR, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Coon Run Levee and Drainage District was established by an order entered at the December term, 1899, of the county court within and for the county of Morgan, in pursuance of the provisions of an act entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others," etc., approved and in force May 29, 1879. (Hurd's Stat. 1899, p. 664.) Twelve men were summoned and empaneled in said county court as composing the jury to make an assessment of damages, and damages and benefits, in pursuance of the provisions of section 16 of the act. The jury completed their assessment of damages and benefits and fixed a time at which they would attend before the county court for the presentation and hearing of objections to such assessments, in compliance with the provisions of sections 19 and 20 of the said act. Ten days' notice of the time when such objections might be filed before said jurors in the said county court was given by posting and publishing notices as required by sections 3 and 19 of the act, and a summons was issued out of said county court commanding the sheriff of said county to summons the appellant company to be and appear before the said court and jury at the time in question, and file objections, if any it had, to the report of the jury assessing damages and benefits, as aforesaid. The report of the jury contained the following, so far as such report affected the appellant company: "Wabash Railroad Company.—Right of way for ditch 150 feet wide across right of way of Wabash Railroad Company, in north-east quarter of section 5, township 15, range 13.—Damages $10.50." The appellant company appeared and filed a number of objections, but they were all overruled and judgment was entered confirming the assessment as made by the jury. This appeal challenges the correctness of such judgment.

In the view we have taken of the case it is only necessary we should consider the questions raised by the

following of the objections filed by the appellant company, namely:

"*Second*—There is no authority in said district or jury to acquire any part of its right of way or other property, or any right therein, for ditch or other purposes, in the manner attempted by these proceedings or as directed by the court herein.

"*Third*—The attempt to acquire right of way for ditch or outlet across objector's right of way by these proceedings is without authority of law.

"*Seventh*—There is no valid law authorizing these proceedings as against this objector."

Section 31 of article 4 of the constitution of 1870, as originally adopted, was as follows: "The General Assembly may pass laws permitting the owners or occupants of lands to construct drains and ditches, for agricultural and sanitary purposes, across the lands of others." A proposed amendment of this latter section was adopted by the electors November 5, 1878, and proclaimed ratified November 28, 1878. Said section 31 of article 4, as amended, reads as follows:

"Sec. 31. The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts and vest the corporate authorities thereof, with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby."

This amendment to the section added "mining" to the purposes for which the General Assembly were to be permitted to pass laws authorizing the construction of ditches, drains and levees over the property of others, and also empowered the General Assembly to provide for the organization of drainage districts, and to confer

on such districts power to construct drains, ditches and levees by special assessments on the property benefited thereby. The grant of power to the law-making department of the State being in general terms, by necessary implication invested the General Assembly with all the powers necessary to make the grant effective. (*Kilgour* v. *Drainage Comrs.* 111 Ill. 342.) The power conferred on the legislature by the amendment, to pass laws authorizing the construction of ditches, drains and levees over the lands of others, necessarily carried authority in the General Assembly to pass statutes authorizing the condemnation of the lands of such other owners. As in pursuance of the power thus conferred, the General Assembly adopted an act approved and in force May 29, 1879, entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," under section 16 whereof the appellee district was organized and under other sections whereof the proceedings herein in review were had. Said section 16, after that which refers to the establishment or organization of the district, (Hurd's Stat. 1899, p. 669,) is as follows: "And thereupon the court shall empanel a jury of twelve men, having the qualifications of jurors in courts of record; or may, as provided by section 37 of this act, direct that the assessment of benefits herein named shall be made by the commissioners of said district. The jury shall be sworn to faithfully and impartially perform the duties required of them to the best of their understanding and judgment, and to make their assessments of damages, or damages and benefits as the case may be, according to law, or the court may direct that a jury be empaneled before a justice of the peace for the assessment of damages and benefits, in which case the commissioners may apply to any justice of the peace in the county, who shall immediately, without the formality of any written appli-

cation, proceed to summons and empanel a jury of twelve men, having the qualifications of jurors as aforesaid, who shall be sworn in the same manner as is above provided in case of a jury empaneled by the court in which the proceeding is pending, and the justice shall enter upon his docket a minute of such proceeding before him, and the names of the jurors."

Sections 17, 19, 20 and 21 of the act, under which these proceedings were had, are as follows:

"Sec. 17. The jury, when empaneled as aforesaid, shall elect one of their number foreman, and shall proceed to examine the lands to be affected by the proposed work, and ascertain, to the best of their ability and judgment, the damages and benefits which will be sustained by, or will accrue to, the lands to be affected by said proposed work, and shall make out an assessment roll, in which shall be set down, in proper columns, the names of owners, when known, a description of the premises affected, in the words or figures or both, as shall be most convenient, the number of acres in each tract, and if damages are allowed, the amount of the same; and if benefits are assessed, the amount of the same; and in case damages are allowed to, and benefits assessed against the same tract of land, the balance, if any, shall be carried forward to a separate column for damages or benefits, as the case may be.

"Sec. 19. When the jury shall have completed their assessment of damages and benefits, they shall fix a time and place, when and where they will attend, in case the jury was empaneled by the court in which the petition was filed, before the same court at a time fixed within any term, or if the jury was empaneled by some justice of the peace, or if the district was organized before a justice of the peace, then before the same justice, if still in office, and if not, before his successor, or any other justice they may select, for the correction of their assessment, and the jury shall give at least ten days' previous

notice of such time and place, and object of such meeting, by posting and publishing notices in the manner required in section 3 of the act, to which this act is an amendment; the affidavit of any creditable person or persons, that he or they has or have posted such notices as herein required, and the certificate of the publishers of such newspaper, as to such publication shall be sufficient evidence of such facts.

"Sec. 20. The jury shall appear at the time and place appointed, and shall hear all objections that may be made by the owners of any lands which may be allowed damages, or which have been assessed for benefits, or by the commissioners, to the allowance of damages to, or assessments of benefits against, any tract of land, and shall make such corrections as shall seem to them just and equitable.

"Sec. 21. Such hearing, if the proceedings are in the county court, shall be in open court; and the judge of said court shall preside, and the cause shall proceed to a hearing the same as in appeal cases from justices of the peace in such court. The court may, at any time during the proceedings of the jury in making their assessment or considering objections thereto, empanel one or more jurors in the place of any juror or jurors who may fail, for any cause, or refuse to act. At the hearing, the respective parties shall be allowed to introduce all proper evidence, and may be heard either in person or by counsel. After such hearing, the jury shall retire for the consideration of their verdict, which shall consist of making such amendments and corrections to such assessment roll as to them shall seem best and equitable from the law and the evidence in the case, including the personal view of the lands made by them. And if such hearing shall be before the justice of the peace, he shall preside and have the same authority, and proceed in the same manner, as near as may be, as in other causes before justices of the peace."

Acting under authority of section 16 of the act, the county court of Morgan county caused the names of twenty-four persons to be drawn from the jury box and those persons to be summoned to attend the court. Out of these twenty-four persons the court, without notice to the appellant company and in the absence of the company, caused twelve of this number to be selected, empaneled and sworn as a jury. This body of men, under instructions given by the court and following the directions of section 17 of the act, proceeded "to examine the lands to be affected by the proposed ditches and drains, and to ascertain, to the best of their ability and judgment," the damages which should be paid the appellant company and other private owners of property so to be taken or damaged. In this examination and ascertainment of damages the owners of the property to be taken were not participants and were not heard by the jury. The jury completed their assessment of the damages and incorporated the same in a report to the court, as directed by section 19 of the act, and a day was fixed for the hearing of objections on the part of the property owners to the finding of the jury as incorporated in the report. This privilege to file objections to the report was the first opportunity given the appellant company to participate in the ascertainment of the damages, which constituted the compensation to be paid to it for the right of way of the drainage ditch across the right of way of the appellant company. The company immediately protested that the proceedings were invalid and wholly without authority of law.

Section 13 of article 2 and section 14 of article 11 of the constitution of 1870 are addressed to the preservation of the rights of owners of private property sought to be condemned and taken for public use. These sections are as follows:

Sec. 13, art. 2. "Private property shall not be taken or damaged for public use without just compensation.

Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law. The fee of land taken for railroad tracks, without consent of the owners thereof, shall remain in such owners, subject to the use for which it is taken."

Sec. 14, art. 11. "The exercise of the power, and the right of eminent domain, shall never be so construed or abridged as to prevent the taking, by the General Assembly, of the property and franchises of incorporated companies already organized, and subjecting them to the public necessity the same as of individuals. The right of trial by jury shall be held inviolate in all trials of claims for compensation, when, in the exercise of the said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right."

These sections became operative upon the adoption of the constitution, without the aid of specific legislation to enforce them. *People ex rel.* v. *McRoberts*, 62 Ill. 38.

We do not quote section 5 of article 2 (Bill of Rights) of the constitution of 1870, which declares the right of trial by jury as heretofore enjoyed shall remain inviolate, for the reason the provisions of said section 5 have reference only to ordinary forms of action *ex contractu* and *ex delicto*, and do not apply to the exercise of the right of eminent domain. (*Johnson* v. *Joliet and Chicago Railroad Co.* 23 Ill. 124.) Section 14 of article 11 of the constitution, set forth in full above, in express and positive terms declares the right of trial by jury shall be inviolate in all cases when, as here, it is sought to exercise the right of eminent domain in a proceeding in which an incorporated company is interested for or against the exercise of the right. (*Mitchell* v. *Illinois and St. Louis Railroad and Coal Co.* 68 Ill. 286.) Therefore, regardless of statutory provisions, the right to trial by jury in such cases is absolute, unless the effect of the subsequently adopted amendment to section 31 of article 4 of the constitution of 1870 is to deprive the property owner of the right of

trial by jury secured to him by the other sections of the constitution above set forth.

Section 31 of article 4 of the constitution of 1870, as amended, under which the statute authorizing the appellee district to become incorporated was enacted, is paramount to constitutional limitations incorporated in the constitution as originally framed, with which it is in conflict. (*Huston* v. *Clark*, 112 Ill. 344.)  To the extent the amendatory section invades the limitations and safeguards erected by said section 13 of article 2 and section 14 of article 11 of the constitution, for the safety and preservation of private property, the provisions of the amended section must prevail, but in all other respects those limitations and safeguards remained unimpaired and in full force and vigor as part of the organic law of the State.  Said section 13 of article 2 of the constitution guarantees to every property owner that he shall receive just compensation for any of his property taken from him for public uses, and that the amount of such just compensation shall be ascertained by a jury, and the right to have such ascertainment of the just compensation made by a jury in cases such as the one at bar is re-enforced by the express declaration of section 14 of article 11 of the constitution.  The amendatory section does not authorize the taking of the private property of a citizen for the purpose of devoting it to the private purposes of other citizens, but for the construction of the ditches, drains and levees,—purposes which are deemed public in their nature and character.  In *Payson* v. *People*, 175 Ill. 267, we said (p. 277): "Corporations existing for drainage purposes are public corporations, and where land is sought to be taken for the purpose of a ditch it is for a public purpose, and compensation must be made before land of an individual can be taken for such public use.—*Elmore* v. *Drainage Comrs.* 135 Ill. 269; *Chicago and Northwestern Railway Co.* v. *Galt*, 133 id. 657; *Chaplin* v. *Highway Comrs.* 129 id. 651."

Section 31 of article 4 of the constitution, as amended, though it, by implication, empowers the legislature to authorize drainage districts to acquire private property by condemnation, for the purpose of constructing its drains, ditches and levees thereon, does not impair the guaranties of said section 13 of article 2 of the same instrument that the owner of such private property shall be first paid just compensation therefor, and shall have the right to have the amount of such just compensation heard and determined by a jury. Hence the guaranties of section 13 of article 2, that the compensation to be paid for property that is condemned shall be ascertained by a jury, and that of said section 14 of article 11, that the right of trial by jury shall be held inviolate in all trials of claims for such compensation in all cases such as the one at bar, remain in full vigor, in nowise affected or impaired by said section 31 of article 4, as amended.

The important inquiry next in order of consideration is, does the course of proceeding authorized to be pursued by the provisions of the act under which the corporate authorities of the appellee district are seeking to take the property of the appellant company invade the safeguards and guaranties created by said section 13 of article 2 and section 14 of article 11 of the organic law, that the amount to be paid as just compensation for such property so to be condemned and taken shall be ascertained by a jury, and that the right to trial by jury of that issue shall be held inviolate? The enactment in question, it is urged, provides that the damages to the property so to be taken, which is compensation therefor, shall be ascertained by a jury; and it is further insisted that such compensation has in this case been ascertained by a jury.

Two questions of vital importance to private property right here arise, namely: (1) Whether the body of men empaneled under the provisions of the act here under consideration is a "jury," within the meaning of that word

as used and employed in section 13 of article 2 and section 14 of article 11 of the constitution; and (2) is the course of proceeding directed by said provisions of the act an "ascertainment" or trial by a jury of the "just compensation" to be paid the property holder, within the meaning of such constitutional guaranties.

In *Mitchell* v. *Illinois and St. Louis Railroad and Coal Co. supra*, it was said (p. 289): "The right to take private property, without the consent of the owner, for public use, after making due compensation as required by the constitution, even under the most favorable circumstances, savors of hardship and oppression. Nothing but public necessity can justify it, and the welfare of the citizen imperatively demands that it shall never be asserted except in strict conformity with the law of the land."

The constitutional safeguards under consideration must be given a construction which will secure to the owner of the property to be condemned the substantial rights and benefits of a trial by jury, with all of the incidents of such an investigation devised and established to secure an impartial tribunal. It is essential to the organization of a jury within the true construction and meaning of these constitutional provisions, that the citizen whose property is to be appropriated to the use of others at a price to be fixed by such jury, shall be notified that a jury to sit in his case is to be empaneled, and shall be permitted to be present when such jurors are to be selected, and to urge, as objection to the empaneling of any one tendered as a juror, that such person has formed a disqualifying opinion as to the issue to be tried, from personal knowledge or from statements of witnesses in the case, etc., or has a disqualifying pecuniary interest in the verdict to be rendered by the jury, or that, for some other reason among the many others recognized by the general laws of the State, such person should be excluded from the panel as incompetent to discharge, fairly and impartially, the duties of a juror. The right

194—21

to participate in the selection of the jurors, to interpose challenges as for cause, is universally recognized as an indispensable element of the administration of justice through the medium of trial by jury. *Rich* v. *City of Chicago*, 59 Ill. 286; Cooley's Const. Lim. (4th ed.) 703, 704; Elliott on Roads and Streets, (2d ed.) sec. 280.

Under our constitution, which has provided the jury as the tribunal for the ascertainment of the just compensation which the property holder is entitled to receive, the proceedings for the condemnation of property are judicial in character, and the property holder is entitled to an impartial jury, and to that end is the opportunity to be present and prefer legal objections to those persons tendered to serve as jurors in the cause. The act by virtue of which the proceedings under review were had purports to authorize the selection and empaneling of the jury in utter disregard of these rights of the citizen whose property is to be taken or damaged for the use and benefit of others. The body of men thus brought together as a panel of jurors do not constitute a "jury," within the meaning of the constitutional provisions here involved. Nor can the course of proceeding directed to be taken after the empaneling of the jury be deemed, in a judicial sense, an "ascertainment" by trial by jury of the "just compensation" to be paid to the property holder as a prerequisite to the right to appropriate his property to the use of the district. The direction of the act (sec. 17) that the jury "shall proceed to examine the lands to be affected by the proposed work, and ascertain, to the best of their ability and judgment, the damages" that will be sustained, and shall set down in an assessment roll the amount of damages which, in the judgment of the jury, should be allowed as compensation for any land taken or damaged, excludes the property holder from participation in the production of the evidence before the jury, denies him the right to cross-examine the witnesses who testify against his interest, and all opportunity to know

what the jury have seen or heard about his case or accepted as evidence upon which to determine as to the just compensation to be paid.

In *Ginn* v. *Moultrie, etc. Drainage District*, 188 Ill. 305, we held the provisions of this same section 17 providing that the compensation which a property owner should be found entitled to receive for land taken may be paid by crediting or setting such compensation off as against benefits to accrue to the land from the drainage ditch, to be unconstitutional; and we now find it an imperative duty to declare the course of proceeding in the section directed to be pursued for the determination of the amount of such compensation is not the judicial ascertainment of such amount contemplated by the constitutional provisions bearing on the subject, but that the section, in this respect, is also in violation of the organic law, and for that reason inoperative and void.

We are not unmindful that sections 20 and 21 of the act grant the property holder the privilege of appearing before the jury and objecting to their report.   We have hereinbefore set out both these sections in full.   It is manifest, upon but slight reflection, that their provisions fall far short of securing to the property owner a fair and impartial judicial investigation and ascertainment of the just compensation to be paid for his property that is to be appropriated to the uses of the district.   The jurors, before whom he must prefer his objections, were not, in their selection to sit as judges in the case, subjected to the tests universally recognized as indispensable to the selection of fair and impartial jurors.   He does not know what they have heard or seen and received as evidence for their consideration in the decision of his objections and of his rights in the case.   He has had no opportunity to hear witnesses who have or may have testified against his interest or to cross-examine such witnesses, and thereby, possibly, develop points of weakness in their testimony, or that bias or prejudice against him or

disqualifying interest in the suit seriously affecting the weight or value of their testimony, and, what is scarcely less objectionable, he must urge his objections against the already publicly expressed opinion and verdict of those who are to decide whether his objections or their conclusions, as deliberately announced by them, are correct and just. An opportunity to join in the hearing of a case before a jury, and to endeavor to show them, by proof and argument, what, in justice and right, their verdict should be, and an opportunity to show a jury they have reached an unjust and erroneous verdict, are very different things. Pride of opinion in pre-conceived and openly announced findings and declarations does not conduce to a just and impartial consideration of objections preferred against such findings. The course directed to be taken by these sections of the act cannot be deemed the equivalent of a trial by jury. It is, in effect, a motion to set aside the verdict of the jury on certain specified objections thereto, to be decided by the jury which returned the verdict, with leave to the respective parties to introduce evidence in support of the grounds of objection or of the finding of the jury.

The action taken by the jury on the objections is final, so far as a trial of the question of damages by a jury is concerned. Section 25 of the act authorizes the property owner to appeal or sue out a writ of error, as in the cases of appeals from or writs of error to the county courts in proceedings for the sale of lands for taxes or special assessments. Section 192 of the Revenue act provides appeals from the county court in such tax or special assessment proceedings shall be taken to this court. An appeal does not, therefore, secure a trial *de novo* before a jury. That the right to a trial by jury, though guaranteed by the constitution, may be waived, is conceded,—indeed, we so expressly decided in *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hock*, 118 Ill. 587; and if waived, a valid assessment of the compensation to

be paid the land owner may be made by the tribunal to which the question is voluntarily submitted for decision. But there was no waiver in the case at bar.

The objections presented by the appellant company should have been sustained.

The judgment is reversed and the cause will be remanded for further proceedings not inconsistent with the views herein expressed.        *Reversed and remanded.*

WILKIN, C. J., CARTER and HAND, JJ., dissenting:

We do not concur in the conclusion reached by the majority of the court in this case, that the provisions of the statute quoted in the opinion are unconstitutional. We are of the opinion that they are not in conflict with the constitution.