## THE CITY OF JOLIET

### *v.*

## THE SPRING CREEK DRAINAGE DISTRICT.

*Opinion filed October 23, 1906.*

1. DRAINAGE—*provisions of Levee act for assessment of damages are unconstitutional.* The provisions of the Levee act of 1879 for the assessment of damages to land owners, either by the jury therein provided for or by the commissioners, are unconstitutional and void.

2. SAME—*district organized under Levee act may proceed under Eminent Domain act.* Where a drainage district is organized under the Levee act of 1879, the provisions of which for assessing damages are unconstitutional, the proper method of securing the right of way for ditches and assessing damages therefor is to proceed under the Eminent Domain act.

3. SAME—*commissioners may withhold assessment of benefits until jury have assessed damages.* Commissioners of a drainage district organized under the Levee act may withhold any assessment of benefits as to land a part of which is to be taken for the construction of the ditches, until after they have caused the damages to be assessed by a jury under the Eminent Domain act, since, if the jury find that land not taken is damaged, any assessment of benefits is thereby precluded.

4. SAME—*jury may assess damages but not benefits.* In a proceeding to condemn land for the ditches of a drainage district organized under the Levee act, the jury, if they believe that the benefits to land not taken will exceed the damages, can only find that such land will not be damaged, in which case the commissioners may then proceed to examine the land to determine whether it is benefited, and if so, to assess the benefits.

5. SAME—*when drainage district may include territory in a city.* A drainage district organized under the Levee act has power to include in the district contiguous territory lying within an incorporated city or village and so situated as to require a combined system of drainage and protection for agricultural and sanitary purposes, where the incorporated city or village has not assumed jurisdiction over such territory for drainage purposes further than to empty one of its sewers into a natural stream and drain into it the surface water from some of its streets by means of catch-basins. (*Bishop v. People,* 200 Ill. 33, explained.)

6. SAME—*city cannot be assessed for benefits to streets and alleys.* Against its consent a city or village cannot be assessed for benefits to its streets and alleys by a drainage district organized under the Levee act of 1879, notwithstanding section 55 of the act permits an assessment with reference to "any public or corporate road or railroad."

APPEAL from the County Court of Will county; the Hon. DWIGHT C. HAVEN, Judge, presiding.

This is a statutory proceeding, begun by the filing of a petition on January 17, 1903, in the county court of Will county for the purpose of forming a drainage district, to be known as the "Spring Creek Drainage District," under "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved and in force May 29, 1879, and the amendments thereto, said district to be formed out of lands lying wholly in Will county, and partly in the city of Joliet. The prayer of the petition is as follows: "Wherefore your petitioners pray that a drainage district to be known as the Spring Creek Drainage District may be established according to law under the provisions of the act of the General Assembly of the State of Illinois, approved and in force May 29, 1879, and the several amendments and additions made thereto, and now in force."

On March 20, 1903, the court entered an order, finding that the petition was signed by a majority of owners of property in the district of lawful age, and representing at least one-third in area of the lands proposed to be affected; that said lands are subject to overflow and require drainage for agricultural and sanitary purposes; that the formation of a drainage district is necessary, and that said system of drainage will be useful to the lands and property mentioned in the petition; and it was ordered and decreed by the court that a drainage district be formed from the territory described in the petition, setting forth the limits of the district,

which begins at a point in the center of Iowa avenue in the city of Joliet, and contains 440 acres, more or less, all in the town of Joliet in Will county; that the name of the district be the "Spring Creek Drainage District," and that three persons, named Monroe, Youker and Ahlvin, be appointed commissioners for said district, and proceed to qualify as such, and take the steps required by law to carry into effect the prayer of the petition.

The commissioners made a report, dated September 17, 1903, setting forth that they had examined the lands described in the petition, and other lands therein mentioned, and that the proposed work was necessary; that they had determined on following the route of Spring creek in said district with a few changes and additions thereto, as shown on the maps, plans, etc., attached to their report; that for the main ditch, branch ditches, open, tiled and covered, reference was had to the report of the engineer for said district, attached to the report of said commissioners; that the proposed work is to deepen, widen and wall said main ditches and branches where the same are open and wherever the same is necessary, and to use tile and cover same for other branches; that they employed a surveyor, named Zarley, to make a survey, map, plan, profile and specifications of the work, showing the starting point, route and terminus of the proposed work, and the location, size and dimensions of said ditch, ditches or drains, etc.; that the probable cost of the work is the sum of $165,000.00; that the probable annual cost of keeping the ditch, ditches or branches in repair, after the proposed work is completed, is the sum of $150.00; that none of the lands described in the petition, or set forth as benefited and not named in the petition, will be injured by the proposed work, and that $16,000.00 will be required to pay the damages to lands caused by the construction of the proposed work; that all of the lands described in the petition will be benefited by the construction of said work, and that the aggregate amount of benefits will exceed the cost of the

construction; that they found the ditches, drains, channels or work should be as set forth by the surveys, maps, plans, profiles, specifications and petition filed in the cause; and they ask that their report be approved and confirmed, and that the named drainage district be declared organized into a drainage district known as the "Spring Creek Drainage District," and that the court enter an order directing the commissioners to make an assessment against the lands within said district for the purpose of raising the amount found necessary therein to construct said system of drainage, including the incidental costs and expenses, etc.

At the February term, 1904, of said court, an order was entered that the commissioners should take the required oath, and in lieu of the jury proceed to make an assessment of benefits against the lands within the boundaries of the district, and separately assess all benefits against each tract, lot or parcel of ground within said drainage district in the proportion in which such tract or tracts of land would be benefited, and that the commissioners proceed in all respects pursuant to the statute, etc.

On March 22, 1904, the commissioners filed the original assessment roll of benefits, showing the property specially benefited, giving a description of each lot, block, tract or parcel of land benefited, and the amount assessed as special benefits; the names and residences of the persons who paid the taxes thereon during the last preceding year, etc. The original assessment roll showed that certain lots, belonging to the city of Joliet, to-wit, lots 16, 17, 18, 19, 20 and 21 in James E. Henderson's subdivision, etc., were assessed, each of the first five of said lots at $181.00, and the last lot, to-wit, lot 21, at $118.00. The original assessment roll also showed that the city of Joliet was assessed the sum of $3800.00, as benefits, against the streets located within the boundaries of said district.

At the April term, 1904, the city of Joliet filed objections to the confirmation of the report of the commissioners,

and therein stated that the city of Joliet holds, in fee, title to parts of certain public streets and alleys within the limits of said proposed drainage district, and has an interest in other streets and alleys within the same for the purpose of maintaining such streets and alleys for public travel; that said city owns a bridge, situated on Washington street, where the same crosses Spring creek, and a bridge at Jackson street, where the same crosses Spring creek, all of the said bridges having been erected by said city at great cost and expense to it; that said city also owns lots 16, 17, 18, 19, 20 and 21 above named, and also owns a bridge erected across said Spring creek upon said lot 16; and the city objected to the confirmation of the report, upon the ground that there was no valid law authorizing the creation of such a district; that a part of the territory embraced within it was within the corporate limits of the city of Joliet, and the drainage of such parts had been taken charge of, and provided for, by the city under and by virtue of the charter of the city, and that it was unlawful to impose on such territory a second municipality or power for drainage purposes; that a part of the water-course, described in the petition as Spring creek, is within the corporate limits of the city, and has been improved and is being maintained by said city, at great expense, as a part of the drainage and sewer system of said city, and that, for this reason, said district has no power to assume the control of said part of said Spring creek, or to interfere with the control of the same by the city; that a part of the territory in the proposed district is in said city, and the law does not authorize a drainage district to be created which will include within its limits a part of the territory of an incorporated city; that it is proposed to assess said city for alleged benefits to its streets and alleys, and said proposed district has no power to impose on the city an assessment for benefits to its streets; that it is proposed to assess said city in a further sum for benefits which will accrue to its said lands in James E. Henderson's subdivision,

and said district has no power to impose an assessment on the city for such benefits, if any there should be; that the carrying out of the plans of said district will result in the taking, damaging and destroying of bridges, streets, alleys, school lots and lands, retaining walls and other property of said city, and no lawful method has been followed or is being taken or is proposed by said drainage district to ascertain and determine the amount of damage to said city by reason of the taking or damaging of said property.

On June 9, 1904, the court took up for decision the said objections to the said assessment roll of benefits, and, in its order entered as of the last named date, the court "finds that the said assessment roll includes assessments levied in part against property which will actually be taken for the purposes of said district, which method of making the assessment of benefits the court finds is contrary to law, and the court further finds that said assessment roll should be in that respect amended or modified, and thereupon the court instructs the commissioners to so amend or modify said assessment roll as to exclude from the assessment of benefits by them made, all lands which will actually be taken for the purposes of said drainage district."

Subsequently, on June 24, 1904, the commissioners were given leave to amend their assessment roll, and, in their petition asking that the same be amended, they state that the amounts thereon against each lot, tract or parcel of land were for benefits accruing to the same and not taken or required for the purposes of the proposed ditch; that no assessment was levied against any land required or taken for the said ditch for drainage purposes. Afterwards in July, 1904, the commissioners filed a corrected assessment roll of benefits, which is stated by them to be "a true and impartial assessment of benefits accruing to lands located in said district, and which does not include land required for purpose of channel or ditches;" and in said corrected assessment roll the description of said lots 16, 17, 18, 19, 20 and 21 is cor-

rected by adding thereto the words:   "except portions for channel as shown by 'Exhibit A' filed September 18, 1903." But the amounts assessed against said six lots are the same as in the original assessment roll, to-wit, $181.00 against each of lots 16, 17, 18, 19 and 20, and $118.00 against lot 21.   In the corrected assessment roll the description of the amounts assessed against the city of Joliet is corrected so as to read as follows:   "To amount assessed as benefit against the streets located within the boundaries of said district, except portion for channel, as shown on 'Exhibit A' filed September 18, 1903, $3800.00."

On July 18, 1904, the commissioners reported that they had overruled the objections, and returned into court a corrected assessment roll of benefits.

On July 29, 1904, the court entered an order reciting that the commissioners had filed an amended and corrected assessment roll of benefits, and ordered that the same be approved and confirmed and spread upon the records, and that judgment be entered against each of the lots, blocks and tracts of land located within the district, in accordance with said corrected assessment roll of benefits; and ordered that the assessment roll be payable in ten equal annual installments, etc., and that the clerk of the court certify the corrected assessment roll of benefits, together with the judgment, to the commissioners.   To this order and judgment of the court overruling its objections, and to the assessment of benefits upon its said lots and the streets owned by it, the city of Joliet excepted.   The present appeal is prosecuted from such judgment of confirmation.

ROBERT E. HALEY, and JAMES A. McKEOWN, City Attorney, for appellant:

By this proceeding it is proposed to assess and collect taxes for the purposes of the district and then to acquire the right of way in some future suit or action, but under the Levee act the assessing and levying of all taxes on property

benefited and the securing of the right of way and the fixing of compensation for property taken or damaged must be done in the one proceeding, and that proceeding wholly under this statute. In other words, the question of damages cannot be separated from the question of benefits, and the two questions cannot be adjudicated in different suits. *Railway Co.* v. *Wiltse,* 116 Ill. 449; Starr & Cur. Stat. chap. 42, pars. 30, 46, 88; chap. 47, par. 2; Laws of 1903, p. 163; 10 Am. & Eng. Ency. of Law, (2d ed.) 1094.

There is no constitutional method of fixing damages to property taken or damaged under this proceeding. Therefore property partly taken cannot be assessed in the manner herein sought to be pursued, except where the owner makes no objection to such manner of assessment. *Juvinall* v. *Drainage District,* 204 Ill. 115.

Lands taken or damaged hereunder cannot be assessed for benefits. Starr & Cur. Stat. chap. 42, par. 30; *Juvinall* v. *Drainage District,* 204 Ill. 106; 10 Am. & Eng. Ency. of Law, (2d ed.) 1094.

Property already devoted to a public use cannot be taken for some new and different public purpose except by express authority plainly given, and this Drainage act gives no authority to take a city's streets, alleys, bridges and school lands for purposes of a drainage district. Proceedings for eminent domain are strictly construed. *Railway Co.* v. *Chicago,* 132 Ill. 372.

The city of Joliet has, under its charter, full control over all parts of its territory for purposes of drainage, and no other municipality formed for drainage purposes can embrace part of the territory within said city so as to invade the authority of the city in said matters of drainage. *People* v. *Supervisors,* 111 Ill. 52; *People* v. *Railway Co.* 118 id. 520; *Ottawa* v. *Walker,* 21 id. 605; *Highway Comrs.* v. *Baumgarten,* 41 id. 254; *Bishop* v. *People,* 200 id. 33.

In any event a city cannot be assessed for benefits, because not only does the Drainage act not warrant such as-

sessment, but the whole structure and meaning of the act negative the existence of any such power in the commissioners.   Starr & Cur. Stat. chap. 42, par. 86; *People* v. *Railway Co.* 118 Ill. 520.

S. J. DREW, (J. W. DOWNEY, of counsel,) for appellee:

Drainage commissioners have the right to acquire lands under law of eminent domain.   Hurd's Stat. 1901, chap. 42, sec. 46; Laws of 1903, p. 163; *Chronic* v. *Pugh*, 136 Ill. 549; *Ginn* v. *Drainage District*, 188 id. 307; *Railroad Co.* v. *Drainage District*, 194 id. 310.

The same rule for ascertaining damages which prevails in proceedings for condemnation of private property for public use applies to cases arising under the drainage statute. *Chronic* v. *Pugh*, 136 Ill. 539; *Juvinall* v. *Drainage District*, 204 id. 116.

It was the commissioners' duty to apportion the entire benefits among the several tracts of lands.   *Gauen* v. *Drainage District*, 131 Ill. 458.

Drainage districts can include portions of a city.   *People* v. *Nibbe*, 150 Ill. 269; *People* v. *Scott*, 132 id. 427; *Wilson* v. *Trustees*, 133 id. 433; *Springer* v. *Walter*, 139 id. 419.

Public highways, and bridges on them, do not belong to the counties or towns which construct them, but are held by them in trust for the public.   Elliott on Roads and Streets, 34; *Heffner* v. *Cass and Morgan Counties*, 193 Ill. 452.

Streets and highways are for the public use, and the taking of public property for public purposes is not in violation of the constitution.   *Heffner* v. *Cass and Morgan Counties*, 193 Ill. 448.

Drainage commissioners, when the county court so orders, may make an assessment of benefits, and such provisions of the law are not in conflict with the constitution. *Hosmer* v. *Drainage District*, 135 Ill. 51; *Briggs* v. *Drainage District* 140 id. 53; *Trigger* v. *Drainage District*, 198 id. 233; *Juvinall* v. *Drainage District*, 204 id. 233.

222—29

Corporations created for drainage purposes are public corporations, and lands taken are taken for public purposes. *Railway Co.* v. *Galt,* 133 Ill. 67; *Payson* v. *People,* 175 id. 277; *Chaplin* v. *Highway Comrs.* 129 id. 651; *Elmore* v. *Drainage Comrs.* 135 id. 269.

Mr. JUSTICE FARMER delivered the opinion of the court:

It clearly appears from the steps taken in this proceeding, as set forth in the statement preceding this opinion, that certain property belonging to the city of Joliet must be taken or damaged for the purposes of this improvement. The corrected assessment roll shows that lots 16, 17, 18, 19 and 20, belonging to the city of Joliet, and conceded to be school lots, are each assessed $181.00, "except portion for channel, as shown by 'Exhibit A,' filed September 18, 1903." This is an admission that a part of said lots, or some of them, will be taken for the new channel proposed to be constructed by the drainage district. Indeed, the county court, by its order entered on June 9, 1904, found that the assessment roll included assessments levied in part against property "which will be actually taken for the purposes of said drainage district," and that such method of making the assessment of benefits was contrary to law.

The description of the amounts, assessed as benefits against the streets of the city of Joliet located within the boundaries of said district, especially excepts "portion for channel, as shown on 'Exhibit A,' filed September 18, 1903." The very terms of this description are an admission that a portion of the streets of the city will be taken for the purpose of constructing the new channel to be constructed by the district. A reference to the map, referred to in the description as "Exhibit A," shows that the new channel will take part of lots 16 and 17. The same map shows that parts of a street, called Dillman avenue, and of another unnamed street in the city, will be taken for the purposes of the drainage district. The proof also shows that certain bridges,

erected by the city, will necessarily have to be removed in order to construct the channel required by the new drainage district. But nowhere in the proceedings, set forth in the statement preceding this opinion, is any provision made for ascertaining the amount of damages which will accrue to the property of the city, or the amount of compensation to which the city may be entitled for such part of its property as is taken for the improvement.

This proceeding is exclusively under the Drainage act of May 29, 1879, as shown by the prayer of the petition. Section 5 of the act provides that, on the hearing of the petition, "all parties through or upon whose land any of the proposed work may be constructed, or whose land may be damaged or benefited thereby, may appear," etc. Section 9 provides that the commissioners shall examine the land, and determine what lands will be injured by the proposed work, and the probable aggregate amount of damages such lands will sustain, etc., and whether the proposed district will embrace all the lands that will be damaged or benefited by the proposed work. Section 16 provides that the jury therein mentioned shall make their assessments of damages, or damages and benefits, as the case may be. Section 17 provides that the jury shall ascertain the damages and benefits, etc., and also provides that "in case damages are allowed to and benefits assessed against the same tract of land, the balance, if any, shall be carried forward to a separate column for damages or benefits, as the case may be." Section 19 provides that the jury shall fix the time for the correction of their assessment, after they have "completed their assessment of damages and benefits." Here, however, there is nothing to show the extent of the compensation to be paid to the city, or the damage suffered by it, for the part of its school lots and streets taken or damaged. In this respect there is a failure to comply with the provisions of the act.

On the contrary, the assessments, as originally made against the school lots, were made as well against the parts

thereof to be taken for the improvement, as against the remaining portion not taken. It was certainly erroneous to charge the city with an assessment against such portion of its land as was taken for the improvement. When, however, the assessment was corrected, so as to make it an assessment against the land not taken, the amount was permitted to remain the same. That is to say, the original amount assessed against the whole lot, both taken and not taken, was exactly the same, after the correction was made so as to leave out the part taken. Five lots, 16, 17, 18, 19 and 20, are shown by the plat to be all of the same size, and yet the amount assessed against the three lots of which no part was taken, is the same as the amount assessed against the two lots from which a portion was to be taken.

We have held in repeated decisions that the provisions of the act under which the appellee is organized, commonly known as the "Levee act," for the assessment of damages to land owners, either by the jury therein provided for or by the commissioners, are unconstitutional and therefore inoperative and void. *Wabash Railroad Co.* v. *Coon Run Drainage District,* 194 Ill. 310; *Juvinall* v. *Jamesburg Drainage District,* 204 id. 106; *Michigan Central Railroad Co.* v. *Spring Creek Drainage District,* 215 id. 501; *Hutchins* v. *Vandalia Levee and Drainage District,* 217 id. 561; *Stack* v. *People,* 217 id. 220; *Hull* v. *Sangamon River Drainage District,* 219 id. 454.

Appellant contends that in view of these decisions there is no power or authority for making an assessment of damages to lands taken or damaged by a drainage district organized under the Levee act in the act itself; that the district cannot invoke the Eminent Domain act for the purpose of condemning property for right of way and assessing damages, and that until there is additional legislation land can not be taken or damaged for a drainage district except by consent of the property owner. We cannot agree with this view. It was decided in *Cleveland, Cincinnati, Chicago and*

*St. Louis Railway Co.* v. *Drainage District,* 213 Ill. 83, and *Hutchins* v. *Vandalia Levee and Drainage District, supra,* that a drainage district organized under the Levee act not only had the authority, but the proper method of securing the right of way for the ditches of the district, and assessing the damages therefor, is to proceed under the Eminent Domain act. In the *Hutchins case* it was held that this could not be done under the petition for the organization of the drainage district, but that the petition must be filed under the provisions of the Eminent Domain act. After the organization of the 'district it may proceed, in accordance with the provisions of that act, to condemn the right of way for its ditches and assess the compensation to the owner of the land for the land actually taken and the damages to the land damaged and not taken. Under the order of the court in this case the commissioners were directed to assess benefits against the lands within the district. Manifestly, they could not assess benefits against lands a part of which was to be taken by the improvement until after the damages had been assessed by a jury in a condemnation proceeding, for the assessment of benefits before this was done would necessarily involve a consideration of the damages that would accrue to the land by reason of taking a part of it, and also of whether the part not taken was damaged. The constitution provides that "private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." The Eminent Domain act is the law prescribed for determining and making compensation in such cases.

We see no reason why the drainage commissioners may not withhold any assessment of benefits as to land a part of which is to be taken by the construction of the ditches, until after they have caused the damages for the land taken to be assessed by a jury under the Eminent Domain act, and until after the jury in that proceeding has determined whether the

land not taken is damaged. In the condemnation proceeding the land owner must be awarded the value of the land taken, irrespective of the effect of taking it upon the land not taken. It is the duty of the jury also to determine whether the land not taken is damaged above any benefits that may accrue to it by reason of the proposed improvement, and if it is, to allow that amount as compensation to the land owner. If the jury find the benefits exceed the damages, then they can only find that the land not taken is not damaged, for they have no power to assess the benefits. After the termination of the condemnation proceedings, if it has been found in such proceedings that the land not taken is damaged, this would preclude any assessment of benefits against it by the drainage commissioners, because it is a determination that the property is damaged to the extent of the amount awarded the owner as compensation therefor, above any benefits that may have accrued to it because of the improvement. If, however, it is found in the condemnation proceeding that the land not taken is not damaged, this does not amount to a finding that it is not benefited or that the damages and benefits are equal. If the jury should find, from the evidence, that the land was benefited in excess of the amount it was damaged, their verdict could only be that the land was not damaged, for, as we have before said, in a condemnation proceeding the jury cannot assess benefits. Their duty as to land not taken is to determine, everything considered, whether the property will be damaged by the proposed improvement. In cases where it is determined that land not taken is not damaged, we are of opinion the commissioners may then proceed to examine it and determine whether it is benefited, and if so, assess the benefits. It may be said this would involve a consideration of damages caused by taking a part of the land in order to determine whether the land not taken is benefited. This is not correct. The question of whether the land not taken is damaged has already been determined in a proper proceeding and it has been found not

damaged.   In such case the commissioners have no power to consider the question of damages.   All they can do is to determine whether the land not taken is benefited, and this no more involves a consideration of damages than does the assessment of benefits to all other lands in the district.

These views are sustained by *City of Chicago* v. *Mecartney*, 216 Ill. 377.   In that case the city of Chicago filed a petition to condemn a part of Mecartney's land under the provisions of the City and Village act providing for making local improvements by special assessment.   On the trial the jury awarded him compensation for the land taken and found there was no damage to the remainder.   The city then filed a supplemental petition for a special assessment upon the property benefited by the improvement and commissioners were appointed to make the assessment.   They returned an assessment roll assessing benefits to the property of Mecartney.   He filed objections to its confirmation, and among them claimed that on the trial in the condemnation proceeding evidence was heard by the jury as to benefits that would accrue to his property from the improvement, and that it was considered by the jury that such benefits were an offset to the damages to the land not taken; that this was *res judicata* and the judgment in the condemnation proceeding was a bar to the proceedings by the commissioners to assess benefits.   These objections were tried without a jury, and the trial court held that the issues presented had been litigated and determined in the condemnation proceeding and sustained the objections.   This court reversed that judgment, and said (p. 381) : "If the jury in a condemnation proceeding award damages for property not taken the judgment is conclusive against a subsequent proceeding to assess it for benefits, because the judgment is conclusive that there are damages and not benefits; but where a jury simply find that there are no damages, the verdict and judgment are not and cannot be conclusive that there are no benefits.   The fact that property is greatly benefited and doubled in value by an

improvement is not inconsistent with a verdict that it is not damaged, but perfectly consistent with it. It would seem to be an absurdity to say that the finding of a jury that the property of defendant in error was not damaged was also a finding that it was not benefited,—a question which the jury could not legally consider. The purpose and effect of this proceeding are different. The commissioners were required to assess against the lots of defendant in error the benefits that would accrue from the improvement. They were not authorized to award damages for depreciation of the lots resulting from the taking of a part of them, the fact that there were no damages having been determined in the condemnation proceeding." We see no reason why drainage commissioners may not pursue the same method in making assessments that were pursued in that case.

Spring Creek is a natural water-course, and it is proposed to widen and straighten its channel so as to increase its capacity to carry the waters of the district. Said creek is a crooked stream, at some places being wholly outside the corporate limits of the city of Joliet, at other places along the line of its corporate limits, and at still other places running inside the corporate limits of said city. In order to utilize it for the purposes desired a portion of the city of Joliet was included in the drainage district, and, as will be seen from the statement preceding this opinion, the city was assessed $3800 for benefits to certain of its streets. Appellant contends there is no authority given by the Levee act, or elsewhere, to include a part of a city organized, as appellant is, under the City and Village act of 1872, within and make it a part of a drainage district. The basis for this contention is, that the city of Joliet is an organized municipality under the City and Village act, possessing full power and authority over the subject of drainage within its territory, and that its territory cannot be invaded and a portion of it included in a drainage district composed of territory lying partly outside the corporate limits of the city.

In *People ex rel.* v. *Nibbe,* 150 Ill. 269, it was held that under the Farm Drainage act a drainage district had the right to take in territory already organized under the general law in relation to cities and villages.   It is not denied that property already appropriated to one public use may also be subjected to another public use if granted by the law-making power in express terms or by necessary implication.   In the case last above cited the court said:  "The provisions of these sections [section 11 of the Farm Drainage act and subsequent sections] are sufficiently broad to embrace any and all contiguous territory within a town which is so circumstanced as to require a combined system of drainage for agricultural or sanitary purposes, wholly irrespective of whether any portion of it is already included within the boundaries of a pre-existing municipal corporation or not. And we know of no other provision of the statute, and are referred to none, by which any further limitation in this respect is imposed."

As we read the two acts, the power granted under the Levee act is as extensive as that under the Farm Drainage act.   Section 2 of the Levee act authorizes a majority of the owners of lands, representing one-third in area, within a district proposed to be organized for agricultural, sanitary or mining purposes, in a combined system of drainage or protection from overflow, to file in the county court a petition for the organization of a drainage district.   Section 3 provides for giving notice of the filing of the petition.   Section 4, for the jurisdiction of the county court, and section 5, for the hearing and finding of the county court and the appointment of commissioners.   Subsequent sections provide for the procedure until the district shall have been declared organized and for the assessment of damages or benefits that will be sustained by or accrue to the lands affected.   There is no express grant in the act to include in a drainage district territory embraced within the corporate limits of a city, nor is any exception made as to such territory.   The same

is true of the Farm Drainage act, and if the power under that act is granted, by implication, to include in the district contiguous territory lying within an incorporated city or village and so situated as to require a combined system of drainage and protection for agricultural and sanitary purposes, the same power must necessarily be held to be conferred by the Levee act.

It is said by appellant that *Bishop* v. *People,* 200 Ill. 33, overrules *People ex rel.* v. *Nibbe, supra.* This is a misapprehension. Other acts of the legislature, independent of the City and Village act, confer power upon the corporate authorities of cities and villages to divide their territory subject to overflow, into districts, and to construct, maintain and keep in repair drains, ditches and levees by special assessment upon the property benefited thereby. It is not claimed that the city of Joliet had organized the territory included in the drainage district under any act of the legislature for drainage purposes or to prevent overflow. All it had done was to build bridges where streets crossed Spring creek, construct one sewer which emptied into the creek, and build a wall along the west line of the channel five and one-half to six feet high for the distance of about three blocks. This wall is tumbled down in some places and is not in a good state of repair. It had also constructed some catch-basins on one or more streets, emptying into the creek. No work appears to have been done to increase the capacity of Spring creek, which overflows in time of high water, to carry off the water that came into it. In the *Bishop case, supra,* the part of the city of Mattoon sought to be embraced in the drainage district was included within one of the drainage districts of the city and the city had expended a large sum of money in straightening and deepening Kickapoo creek, which was the ditch sought to be used by the drainage district. In that case the court said: "The city having assumed jurisdiction over that part of the creek or ditch within its corporate limits, that jurisdiction must, for the use to which it

has been put by the city, be exclusive." Here the case was different. The portion of the territory of the city sought to be embraced within the district had not been organized by the city of Joliet as any part of a district for drainage purposes. It had done nothing more than empty one of its sewers into the creek and empty surface water from some of its streets, by means of catch-basins, into the creek. The channel of the creek remained as it had been in a state of nature.

It then remains to be determined whether the drainage district authorities had power to assess benefits against the city of Joliet without the consent of said city and over its objections. We are unable to find any such authority in the act under which the appellee is organized. Section 55 of the act authorizes the assessment of benefits against "any public or corporate road or railroad" and apportioning to "the county, State or free turnpike road, to the township, if a township road, to the company, if a corporate road or railroad, such portions of the cost and expenses thereof as to private individuals." Said section further provides that the amount assessed against "any railroad company or private corporation shall, upon the confirmation of the assessment roll by the county court, become a lien upon the real property of such railroad company or private corporation, and have the same force and effect as a judgment at law in favor of such district against such railroad company or private corporation, and execution may issue thereon as upon judgments in courts of record in other cases, and shall have a like lien upon personal estate. * * * In case such assessment is made against any township in this State the commissioners of highways of such town shall cause the same to be levied and paid to said district in the manner provided by sections 13, 14, 15 and 16 of an act entitled, 'An act in regard to roads and bridges in counties under township organization, and to repeal an act and parts of acts therein named,' approved June 23, 1883, or in such manner as may now or hereafter be provided by law." The remainder of said sec-

tion relates to the powers and duties of the respective parties with reference to the removal of bridges where such removal is found necessary in the construction of the work. The sections of the Road and Bridge act referred to provide for the levy and collection of road and bridge taxes and the amount required to liquidate road and ditch damages.

In *Drainage Comrs.* v. *Village of Cerro Gordo,* 217 Ill. 488, the commissioners of the drainage district, which was organized under the Farm Drainage act, made an order attaching certain portions of the incorporated village of Cerro Gordo to and making them a part of the drainage district on the ground that the village authorities had connected the drains and ditches of the village with the drainage district ditches and had tiled a part of the streets into the ditches and drains of the drainage district. The commissioners classified the streets and alleys of the village so attached to the district, under the provisions of the act concerning farm drainage, and by an assessment roll assessed against the village for benefits the sum of $976.66. The village refusing to pay the assessment, an action at law was brought by the drainage commissioners to recover it. It was contended by the drainage commissioners that section 40 of the Farm Drainage act authorized the assessment. That section provides that if in the construction of the work "any public highway or railroad" would be benefited thereby, the commissioners should have the power to assess "to such public road or railroad such sum or sums as will be just and equitable for such public road or railroad to pay, in proportion to the benefits received, * * * and the sum found to be the benefit to the railroad or public road shall express the proportional part of the corporate taxes of the district to be paid by such railroad or public road, as the case may be. * * * The amount of such road tax shall be paid out of the road and bridge tax of the town or the district in which the, public highway or part benefited lies." In discussing that subject the court said (p. 492) : "The argument of the

plaintiffs in error is, that the word 'highway' is the generic name for all kinds of public ways, including streets and alleys, and that the word as employed in said section 40 should be given that meaning, and the section held to empower the commissioners of a drainage district, if the construction of the ditches of the district shall benefit the streets or alleys of any village, to assess against such village such amount as will be just and equitable to be paid for the benefits so conferred on the streets and alleys by the work of the district. The words 'public highway' and the words 'public road' are used in section 40 as though interchangeable in meaning, and the section provides that the sums assessed for benefits to such public highway or public road shall be paid out of the road and bridge tax of the town or district in which the same, or the part benefited, lies.   Hence it is plain that the words 'public highways' were intended to mean public roads,—not the streets or alleys of a city or village,—and that the benefits authorized to be assessed as compensation to the drainage district for benefits conferred by its ditches or drains were to be assessed and paid, as the statute expressly provides, 'out of the road and bridge tax,' and not out of the funds of any city or village."

Nowhere in section 55 of the Levee act are streets of an incorporated village or city mentioned, and the provisions made by said section for the collection of the assessments made against "public roads" or "township roads," if it were otherwise doubtful whether they were intended to be included in the act, make it clear there was no such intention. If assessments of benefits are made they cannot be taxed against the streets as in cases of other property, for such other property may be sold upon a failure to pay the assessments.   Clearly streets could not be sold for such purpose. If authority exists without the consent of a city to make and enforce payment of assessments made for street benefits resulting from the construction of the work, it could only be done by compelling the city, in some appropriate action for

that purpose, to levy and collect a tax for its payment. No provision is made for any such thing being done in section 55 or any other section of the Levee act. The mention of certain public roads in the act, and the provisions made for the collection of assessments made against them, and the failure to mention streets of a city or village or to provide any means for the collection of assessments if made against such streets, preclude the construction that the drainage commissioners had any authority to assess benefits to the public streets of the city of Joliet, over its objections.

The judgment of the county court is reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*